The CITIZENS BANK & TRUST
COMPANY OF WASHINGTON,
Appellant (Plaintiff Below),

v.

Pearson E. GIBSON, Marion M. Gibson,
Lafayette Production Credit Association, Fountain County Farm Bureau
Cooperative Association, Appellees (Defendants Below).

No. 4–1182A355.

Court of Appeals of Indiana,
Fourth District.

April 26, 1984.
Rehearing Denied June 4, 1984.

James F. Havill, P.C., Washington, for appellant.

Christopher E. Baker, Rubin & Levin, Indianapolis, for appellees Pearson E. Gibson and Marion M. Gibson.

John C. Duffey, Thomas L. Ryan, Stuart & Branigin, Lafayette, for appellee Lafayette Production Credit Ass'n.

MILLER, Judge.

A bank's mortgage foreclosure action and the defendants' counterclaims for fraud, negligence, and breach of contract are the subjects of the instant appeal. The Citizens Bank & Trust Company of Washington brought suit to collect on a note signed by Pearson E. Gibson and to foreclose a mortgage executed by both Gibson and his wife, Marion, which allegedly secured the note. The Gibsons counterclaimed for damages they allege accrued to them by reason of the Bank's involvement in the improper negotiation of certain checks by one of Mr. Gibson's employees and in the mishandling of certain wire-transfer funds. The Bank's motion for summary judgment on the counterclaims was granted in part on the grounds that Mr. Gibson's release of the employee was an election of remedies precluding suit against the Bank on the issue of the checks. After trial on the Bank's complaint and the remainder of the Gibsons' counterclaims, the trial court granted judgment in the Bank's favor on the wire-transfer issue in the counterclaim. As for the Bank's original suit, the trial court granted judgment for the Bank on Mr. Gibson's personal liability on the subject note but denied judgment against Mrs. Gibson's personal liability and denied foreclosure on the grounds that Mrs. Gibson was not bound by the terms of the mortgage to bear any responsibility for Mr. Gibson's individual

debts. Both parties appeal. We disagree with the trial court's grant of summary judgment in the Bank's favor on the counterclaims but also with the court's failure to order foreclosure. Therefore, we reverse on these two issues but affirm in all other respects.

### ISSUES

The Bank presents us with a single issue: Whether the trial court's failure to allow the Bank to foreclose a jointly executed mortgage securing an individually executed debt was contrary to the law. In Mr. Gibson's appeal from the judgments rendered against his counterclaims, he asks that we address the following:

1. Whether the trial court erred in granting partial summary judgment on Mr. Gibson's counterclaims when there existed genuine issues of material fact, as evidenced by his post-trial affidavit, attached to but stricken from his motion to correct errors.

2. Whether it was error for the trial court to refuse to hear evidence on the issue of punitive damages with regard to the remainder of Mr. Gibson's counterclaim (the wire transfer).

### FACTS

 Mr. and Mrs. Gibson jointly executed, as "Mortgagors and Borrowers," an "indemnifying" mortgage in favor of the Bank, on or about December 18, 1970. Although the actual date of signature is somewhat in doubt, both Gibsons acknowledged their signatures on March 9, 1971, and the mortgage was duly recorded on March 13, 1971. Express terms of the mortgage included the following:

"Pearson E. Gibson and Marion M. Gibson, Husband and Wife, ... hereinafter called 'MORTGAGOR' do hereby mortgage and warrant...."

"This Mortgage is executed to secure the due and punctual payment of *all indebtedness of Mortgagor and Borrowers* to Mortgagee *whether now existing or hereafter incurred,* including all renewals and extensions thereof, not to exceed an aggregate principal amount of Fifty Thousand Dollars ($50,000.00) and all interest accrued thereon and fees and expenses of Mortgagee incurred in connection therewith....

"Mortgagor shall duly perform the duties and obligations to be performed by it under this Mortgage and shall pay when due all indebtedness of Mortgagor secured by this Mortgage."

Record, pp. 48–49 (emphasis added). The Gibsons signed in the capacities of "Mortgagors and Borrowers."[1] About two years later, on April 2, 1973, Mr. Gibson, alone, signed a note for $77,366.38, secured by the mortgage. Upon default of this note, the Bank brought suit for the debt and foreclosure of the mortgaged real estate against the Gibsons and joined Lafayette Production Credit Association and Fountain County Farm Bureau Cooperative Association to answer to their respective liens against the property. After trial to the court, the judge ruled Mr. Gibson personally liable on the note in the amount of $70,162.84 plus interest of $49,209.33 and reasonable attorney fees of $12,000. However, it also ruled the Bank was not entitled to foreclosure of the mortgage and dismissed Mrs. Gibson and the two credit associations from the action. The Bank appeals, with the trial court's decision being defended by Mr. Gibson and the Lafayette association alone.

The other facet of this appeal deals with the Gibsons' counterclaims for fraud, negligence, and breach of contract. The bases for these claims is not entirely clear, particularly because Gibson's counsel did not set them forth in his appellate brief. However, from what we can piece together, we believe that Gibson is claiming the Bank

---

1. The Gibsons also executed a "Continuing Guaranty" to pay the principal sum of $100,000 on their joint personal debts. However, Indiana law plainly denies any effect to a "guaranty" for one's own debts. *Indianapolis Morris Plan Corp. v. Sparks,* (1961) 132 Ind.App. 145, 172 N.E.2d 899 (guaranty requires a third-party guarantor).

was involved in the unauthorized negotiation of several checks written either on one of Gibson's business checking accounts or to that account. Evidently, from December, 1970 through May, 1971, the manager of one of Gibson's stockyards, who was authorized to sign checks on the account, wrote and otherwise negotiated several checks (unsanctioned by the business) at the Bank and deposited the funds in his personal account. In addition, Gibson claims the Bank misappropriated a certain wire transfer of funds sent for Gibson's business when the Bank set off certain amounts to his checking account to cover overdraws. The Gibsons sought $500,000 compensatory and $10,000,000 punitive damages on these claims.

After the parties stipulated that certain of the checks were not actionable, the trial court granted partial summary judgment [2] to the Bank on all counterclaims resting upon the remainder of the checks. Its reasoning relied upon a written release signed by Mr. Gibson and his perfidious employee by which Gibson received certain of the employee's assets in exchange for the employee's release from all further claims. The trial court granted summary judgment to the bank on the issue of the checks because it determined Mr. Gibson had elected his remedy by recovering restitution from the employee and was thereafter foreclosed from later pursuing recovery from the Bank. Summary judgment was also had against Mrs. Gibson on all the counterclaims because she had no interest in the affected business matters so Mr. Gibson's allegations regarding the wire transfer were the only issues in the counterclaims remaining for trial. After trial, the court granted judgment to the Bank on those claims, and Mr. Gibson appealed alone, alleging only the impropriety of the partial summary judgment regarding the *checks* and the court's failure to allow evidence of

punitive damages concerning the *wire transfer.*

## DECISION

### *Mortgage Foreclosure*

■■■■ The Bank, having prosecuted for foreclosure of this mortgage and having been denied that claim, is appealing a negative judgment. We can set aside that judgment only as contrary to law and only if there is neither direct evidence to support it nor reasonable evidentiary inferences to be drawn that would do so. We can neither weigh the evidence nor determine witnesses' credibility but must defer to the trier of fact to resolve any conflicts arising therefrom. *Brand v. Monumental Life Insurance Co.,* (1981) Ind., 417 N.E.2d 297. In the case here, we find the unconflicting evidence leads to the conclusion that the Bank is entitled to foreclosure.

■■■■ Basic contract principles govern our application of this mortgage's provisions to the consequences of the default by Gibson on his individual note. *See, e.g., Merchants National Bank & Trust Co. v. H.L.C. Enterprises, Inc.,* (1982) Ind.App., 441 N.E.2d 509. Thus, we remind the parties that the intention of the parties, *as expressed by the language of the mortgage,* controls our decision here. *Id.; Walker v. Bement,* (1911) 50 Ind.App. 645, 94 N.E. 339. In the absence of fraud or overreaching, which is not alleged by Gibson, and where there is no ambiguity, the objective word of the agreement surmounts the subjective understanding of the parties. And "[t]he court may not ignore or eliminate provisions of the instrument." *Merchants National Bank v. H.L.C. Enterprises, Inc.,* 441 N.E.2d at 513. Proceeding to the specific agreement here, we find the clear language of the agreement indicates the parties intended this jointly executed

2. We are not certain as to when the motion for summary judgment was made. The record brought up by the pre-appeal order includes only a motion for summary judgment against Mrs. Gibson, consolidated with a motion to dismiss all aspects of the counterclaims. The record does reveal a hearing was held on the matter, and neither party disputes the procedural legitimacy of the court's ruling on the motion. Thus, we assume the parties were accorded sufficient due process that we need not address the matter further.

mortgage for security of Mr. Gibson's individually executed note.

First, we observe that this mortgage is of the open-ended variety, valid in Indiana so long as terms for future advances are explicitly set forth in the instrument. *In re Woodruff*, (7th Cir.1959) 272 F.2d 696, *cert. denied* (1960) 362 U.S. 940, 80 S.Ct. 806, 4 L.Ed.2d 770; *Brinkmeyer v. Browneller*, (1876) 55 Ind. 487; *Merchants National Bank v. H.L.C. Enterprises, Inc., supra.* The agreement here secures "all indebtedness ... whether now existing or hereafter incurred, including all renewals and extensions thereof." Record, p. 48. So, regardless of whether the Bank argues the note signed by Mr. Gibson in 1973, is an extension of another signed in 1970 (a connection not borne out by the record), the fact remains this mortgage would cover the 1973 note as a future advance if the rest of the provisions cover Mr. Gibson's individual note. We believe they do as the explicit language of the agreement indicates.

In the document, Mr. and Mrs. Pearson are referred to in the singular, as the "mortgagor":

> "Pearson E. Gibson *and* Marion M. Gibson, Husband and Wife, ... hereinafter called 'MORTGAGOR' ...."

(Emphasis added.) We do not quarrel with the clear intent of these terms that refer to both Gibsons *jointly* as the singular mortgagor. Observation of the conjunction, "and," makes this self-evident. However, the mortgage was

> "executed to secure the due and punctual payment of all indebtedness of Mortgagor and *Borrowers* to Mortgagee...."

(Emphasis added.) By following the dictates of the principle that we may not ignore or eliminate terms of the mortgage, we find that not only are debts of the "mortgagor" secured as joint obligations of Mr. and Mrs. Gibson, but so are those of the "borrowers." And the Gibsons executed the mortgage both as "mortgagors" *and* as "borrowers." We believe the two terms were meant to encompass different entities and thereby secure both joint *and* individual debts of Mr. and Mrs. Gibson.

A "mortgagor" is one who, by written agreement, pledges property he owns for a particular purpose, such as security for a debt. 20 I.L.E. *Mortgages* § 22 (1959). A "borrower," on the other hand, is one to whom something is lent upon his request. BLACK'S LAW DICTIONARY 231 (Rev. 4th ed. 1968); *see also Protective Insurance Co. v. Coca-Cola Bottling Co.* (1981) Ind.App., 423 N.E.2d 656. In the instant case, "borrower" refers to one who receives money by loan. *See City of Richmond v. McGirr*, (1881) 78 Ind. 192. The distinction between the two terms is well-defined. Therefore, we believe their use in this mortgage refers to separate entities: "mortgagor," in the singular, refers jointly to Mr. and Mrs. Gibson as the owners of the property; "borrowers," refers to Mr. and Mrs. Gibson also but because it distinctly uses the plural form in juxtaposition with the singular "mortgagor," we conclude it refers to the Gibsons severally and not jointly. Hence, the provision referring to the indebtedness of "Mortgagor and Borrowers" is not redundant but refers to the Gibsons in separate terms of joint indebtedness and individual indebtedness. We find this conclusion particularly cogent in light of language in the agreement which affixes personal liability only upon the joint debt:

> "*Mortgagor* shall duly perform the duties and obligations to be performed by it under this Mortgage and *shall pay when due all indebtedness of Mortgagor* secured by this Mortgage."

(Emphasis added.) We believe a distinction between "mortgagor" and "borrowers" was intended as a means of distinguishing between joint and individual indebtedness. By applying this express language of the mortgage to the consequences of Mr. Gibson's individual default, we deem foreclosure of the mortgage appropriate because the agreement expressly secured the individual debts of each of the Gibsons. Thus, the trial court erred in failing to award foreclosure in the Bank's favor, up to the mortgage limit of $50,000 plus interest. In the absence of appellate argument by the

Lafayette association and in view of the uncontradicted evidence of the mortgage records, we find the Bank is entitled to priority of its lien in said foreclosure.

 Our resolution in this manner does not wholly fulfill the Bank's claims on the debt because Mrs. Gibson was dismissed from the suit on the issue of her personal liability. However, we agree with the trial court on this issue because as we stated above, the mortgage clearly created personal liability in the Gibsons only for joint indebtedness, by the sole use of the singular "mortgagor." And as one of our statutes clearly requires:

"No mortgage shall be construed as *implying* a covenant for the payment of the sum to be secured, so as to enable the mortgagee ... to maintain an action for the recovery of such sum; *and where there is no express covenant contained in the mortgage for such payment,* and no bond or other separate instrument to secure such payment shall have been given, *the remedies of the mortgagee shall be confined to the lands mentioned in the mortgage.*"

IND.CODE 32–8–11–2 (emphasis added) In the absence of an express covenant here creating personal liability for the indebtedness of both "mortgagor" and "borrowers," Mrs. Gibson is not liable upon any deficiency the foreclosure may create in her husband's indebtedness. *See also Gallagher v. Central Indiana Bank,* (1983) Ind.App., 448 N.E.2d 304 ("A mortgage may secure the debt of another without the mortgagor assuming personal liability for the debt.")

### Gibson's Counterclaim

Mr. Gibson contends the trial court erred when it granted partial summary judgment to the Bank upon the claims of fraud, negligence, and breach of contract based upon the allegedly improper negotiation of some of Gibson's checks. Gibson argues a material issue of fact existed, precluding summary judgment; however, the fact of the matter is, summary judgment was incorrect as a matter of law.

The trial court issued findings of facts and conclusions of law when it rendered its partial summary judgment. Findings of fact are usually unnecessary in such proceedings because if no material issues of fact are to exist for summary judgment (Ind.Rules of Procedure, Trial Rule 56), findings made to resolve conflicts in evidence are not appropriate. *Uhl v. Liter's Quarry of Indiana, Inc.,* (1979) 179 Ind. App. 178, 384 N.E.2d 1099; *Sekerez v. Lake County Board of Commissioners,* (1976) 171 Ind.App. 463, 358 N.E.2d 140. However, findings and conclusions are helpful in facilitating review of a case, *see, e.g., Jenkins v. Nebo Properties, Inc.,* (1982) Ind.App., 439 N.E.2d 686, especially here where the parties have failed to make any meaningful record of the summary judgment proceedings by the absence of the motion itself, pertinent memoranda of law, and the transcript of evidence from the hearing. The court's findings therefore are the only indication we have of the basis for granting summary judgment. And they indicate to us that the wrong law was applied.

 The trial court decided the issue on the basis of the theory of election of remedies. The judge found that, because Mr. Gibson had signed a release in favor of the employee who improperly negotiated the checks in exchange for partial restitution of losses, Mr. Gibson had elected to pursue his recovery from the employee and was thereafter prevented from pursuing claims against the Bank. In so deciding, the trial court expressly relied on our decision in *V.H. Juerling & Sons, Inc. v. First National Bank of Richmond,* (1968) 143 Ind. App. 671, 242 N.E.2d 111, where we applied the principle of election of remedies in a similar, although crucially different, set of circumstances. In the *Juerling* case, a company's bookkeeper forged certain officers' signatures on company checks made payable to herself, then endorsed them and cashed them for her own use. After discovery of the problem, the company and the bookkeeper entered into an agreement for restitution of part of her ill-gotten gains. The company then attempted to sue

the banks involved for negligence and breach of contract. This court stated the company was barred from pursuing these suits when it signed the agreement with the bookkeeper as having elected to pursue this remedy. This scenario, at first blush, parallels the facts presented by Mr. Gibson. However, the agreement in the *Jeurling* case *was not a release,* as is present here. For this reason, we believe the legal principles of an election of remedies was appropriate for *Jeurling* but not here. Rather, legal principles, regarding the effect of *releases* are pertinent.

▅▅▅ The doctrine of election of remedies *bars* the pursuit of inconsistent remedies, i.e. one cannot pursue recovery admitting one statement of facts while pursuing another remedy denying those same facts. *City of Hammond v. Beiriger,* (1975) 164 Ind.App. 275, 328 N.E.2d 466. In *Jeurling,* the company in effect ratified the banks' actions by agreeing to accept the bookkeeper's partial restitution. The suits against the banks were in essence a denial of that ratification. On the other hand, a release is a voluntary *"discharge* of an existing or right of action." *Landers v. McComb Window & Door Co.,* (1969) 145 Ind.App. 38, 248 N.E.2d 358, 363. As happened here, Mr. Gibson's release did not ratify the Bank's actions; it merely gave up any further right of recovery against the employee, without establishing two inconsistent sets of facts regarding the Bank's actions. All that could prevent suit against the Bank would be the actual effect of the release itself. This, of course, differs from

issues raised by the doctrine of election of remedies. To allow the treatment of releases to be subsumed under such doctrine would merely confuse the essentially estoppel-type principles involved in an election of remedies and the waiver-type issues engendered by a release to no purpose. Thus, we find the trial court applied the wrong legal principles to the facts here, and its decision must be reversed.

▅▅▅ We are aware that the release is indeed in the record, and an alternate ground for deciding the issue may be before us through application of laws regarding releases. However, it appears to us to be inequitable to address a legal theory that does not appear to have been argued before the trial court, and more to the point, to have ever been raised as an affirmative defense, as required by Ind.Rules of Procedure, Trial Rule 8(C). *Dawson v. St. Vincent Hospital & Health Care Center, Inc.,* (1981) Ind.App., 426 N.E.2d 1328, *overruled on other grounds.* We therefore must reverse the partial summary judgment and remand for further proceedings (which could include the consideration of the other affirmative defenses raised as well as a motion to amend the Bank's answer to include the defense of release.) [3]

### Evidence of Punitive Damages

▅▅▅ Mr. Gibson lastly argues the trial court erred in failing to allow him to present evidence of punitive damages to which he is entitled by reason of the Bank's alleged misappropriation of the wire-transfer funds, the other portion of his counter-

---

**3.** Our conclusion in this matter, of course, moots the issues raised by the motion filed here by the Bank to strike portions of Mr. Gibson's reply brief regarding the doctrine of election of remedies. Because the doctrine was altogether inappropriate, it matters not whether Gibson complied with Ind.Rules of Procedure, Appellate Rule 8.3(A)(7) regarding the rule that issues not argued in the original brief cannot be argued in a reply brief. *See Flick v. Simpson,* (1970) 145 Ind.App. 698, 255 N.E.2d 118.

It further moots Mr. Gibson's disagreement with the trial court's action in striking his affidavit attached to his motion to correct errors, which affidavit he claims raises a significant issue of fact regarding the application of the doctrine of election of remedies. Our decision

that the summary judgment was contrary to law makes unnecessary the consideration of such facts. Besides, we believe the trial court was correct in so striking because a party may not offer evidence in a motion to correct error which he simply neglected to present at a prior proceeding. *Collins v. Dunifon,* (1975) 163 Ind. App. 201, 323 N.E.2d 264. Mr. Gibson's sworn statement he was ignorant of the Bank's involvement in the negotiation of the checks could have been raised at trial. Whether such evidence would have been believed is quite another issue inasmuch as Mr. Gibson's sworn deposition indicated he had been in constant contact with the Bank's officers over the matter, long before this counterclaim was filed.

claim. Without addressing the merits, we are compelled to find any error harmless. The trial court granted judgment to the Bank on the wire-transfer claims, a judgment Mr. Gibson does not appeal. He therefore has no compensatory damages, which are required before punitive damages can be awarded. *See Newton v. Yates*, (1976) 170 Ind.App. 486, 353 N.E.2d 485. Without having appealed the compensatory damage portion of the judgment, it would be incongruous to allow an appeal regarding a punitive award.

The Bank prays for additional forms of relief in the *ad damnum* portion of its *Conclusion* section. However, none of these issues were ever argued on appeal, and they are waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

We therefore reverse on the foreclosure issue, reverse and remand upon the partial summary judgment issue, and affirm all else.

CONOVER, P.J., and YOUNG, J., concur.