The CITIZENS BANK & TRUST COMPANY OF WASHINGTON, Appellant/Cross-Appellee (Plaintiff Below),

v.

Pearson E. GIBSON and Marion M. Gibson, Appellees/Cross-Appellants (Defendants Below),

and

Lafayette Production Credit Association, Appellee (Defendant Below).

No. 86S04–8603–CV–312.

Supreme Court of Indiana.

March 27, 1986.

James F. Havill, Washington, William E. Statham, Gerald Allega, Clark, Statham, McCray, Thomas & Krohn, Evansville, for appellant/cross-appellee.

Christopher E. Baker, Rubin & Levin, Indianapolis, for appellees/cross-appellants Pearson E. Gibson and Marion M. Gibson.

John C. Duffey, Thomas L. Ryan, Stuart & Branigin, Lafayette, for appellee Lafayette Production Credit Ass'n.

GIVAN, Chief Justice.

Appellant and appellees have both petitioned for transfer from the Court of Appeals opinion reported in 463 N.E.2d 276. We grant both petitions for transfer. We adopt the recitation of the procedural history as provided by the Court of Appeals.

"A bank's mortgage foreclosure action and the defendants' counterclaims for fraud, negligence, and breach of contract are the subjects of the instant appeal. The Citizens Bank & Trust Company of Washington brought suit to collect on a note signed by Pearson E. Gibson and to foreclose a mortgage executed by both Gibson and his wife, Marion, which allegedly secured the note. The Gibsons counterclaimed for damages they allege accrued to them by reason of the Bank's involvement in the improper negotiation of certain checks by one of Mr. Gibson's employees and in the mishandling of certain wire-transfer funds. The Bank's motion for summary judgment on the counterclaims was granted in part on the grounds that Mr. Gibson's release of the employee was an election of remedies precluding suit against the Bank on the issue of the checks. After trial on the Bank's complaint and the remainder of the Gibsons' counterclaims, the trial court granted judgment in the Bank's favor on the wire-transfer issue in the counterclaim. As for the Bank's original suit, the trial court granted judgment for the Bank on Mr. Gibson's personal liability on the subject note but denied judgment against Mrs. Gibson's personal liability and denied foreclosure on the grounds that Mrs. Gibson was not bound by the terms of the mortgage to bear any responsibility for Mr. Gibson's individual debts." *Citizens Bank and Trust Co. of Washington v. Gibson* (1984), Ind. App., 463 N.E.2d 276, 277.

The Court of Appeals reversed and held the action for foreclosure of the mortgage was appropriate. They also held Gibson's release did not operate as an election of remedies precluding action against the bank.

The Court of Appeals outlined the pertinent facts which we also adopt.

"Mr. and Mrs. Gibson jointly executed, as 'Mortgagors and Borrowers,' an 'indemnifying' mortgage in favor of the Bank, on or about December 18, 1970. Although the actual date of signature is somewhat in doubt, both Gibsons acknowledged their signatures on March 9, 1971, and the mortgage was duly recorded on March 13, 1971. Express terms of the mortgage included the following:

'Pearson E. Gibson and Marion M. Gibson, Husband and Wife, ... hereinafter called *"MORTGAGOR"* do hereby mortgage and warrant....

'This Mortgage is executed to secure the due and punctual payment of *all indebtedness of mortgagor and borrowers* to Mortgagee *whether now existing or hereafter incurred*, including all renewals and extensions thereof, not to exceed an aggregate principal amount of Fifty Thousand Dollars ($50,000.00) and all interest accrued thereon and fees and expenses of Mortgagee incurred in connection therewith....

'Mortgagor shall duly perform the duties and obligations to be performed by it under this Mortgage and shall pay when due all indebtedness of Mortgagor secured by this Mortgage.'

"Record, pp. 48–49 (emphasis added). The Gibsons signed in the capacities of 'Mortgagors and Borrowers.' About two years later, on April 2, 1973, Mr. Gibson, alone, signed a note for $77,366.38, secured by the mortgage. Upon default of this note, the Bank brought suit for the debt and foreclosure of the mortgaged real estate against the Gibsons and joined Lafayette Production Credit Association and Fountain County Farm Bureau Cooperative Association to answer to their respective liens against the property. After trial to the court, the judge ruled Mr. Gibson personally liable on the note in the amount of $70,162.84 plus interest of $49,209.33 and reasonable attorney fees of $12,000. However, it also ruled the Bank was not entitled to foreclosure of the mortgage and dismissed Mrs. Gibson and the two credit associations from the action." *Id.* at 278.

The appellees contend the Court of Appeals erred in that the term "and borrowers" is an unnecessary description

of the word mortgagor or is an ambiguous term which cannot support the conclusion of the Court of Appeals that the trial court's decision is contrary to law. They maintain this is particularly true in light of the rule of contract construction which requires a printed contract form to be strongly construed against the party drafting the document. *See Colonial Discount Corporation v. Berkhardt* (1982), Ind.App., 435 N.E.2d 65.

The clause at issue is often referred to as a dragnet clause and has as its purpose the creation of an open-ended mortgage. These provisions are valid in Indiana. *See Merchants National Bank v. H.L.C. Enterprises, Inc.* (1982), Ind.App., 441 N.E.2d 509 and cases cited therein. The Court in *Merchants* cited the following language from 172 A.L.R. 1079, 1080 (1948).

> "The guiding principle in the construction of a 'dragnet' clause in a mortgage is the determination of the intention of the parties. The question frequently resolves itself into whether, in view of the surrounding circumstances and the language employed in the mortgage, the parties intended the security of the mortgage to operate upon a pre-existing or subsequently created indebtedness not specifically described in the mortgage." *Id.* at 513.

The trial court interpreted the intent and language of the parties as follows.

> "The court further finds that on or about April 2, 1973, the defendant Pearson E. Gibson executed a note payable to the plaintiff herein which note was executed by the said Pearson E. Gibson individually[.] The court finds that by the terms of the mortgage executed herein, the said mortgage was to secure the joint obligations of the parties. The court further finds that the note sued upon by the plaintiff is an individual obligation of Pearson E. Gibson and that the same was not executed simultaneously with the mortgage referred to, nor was it the type of obligation agreed to be covered by the terms of the mortgage.
>
> *  *  *  *  *  *

> "The court therefore finds that based upon the foregoing facts there are no circumstances shown to the satisfaction of the court which would convert the note sued upon by the plaintiff herein into a joint obligation and the mortgage of the defendants Gibson [sic] does not secure individual debts."

We hold the decision of the trial court was not contrary to law. The customary method to include future several debt under a mortgage is to include a phrase such as "the indebtedness of the mortgagors or either of them." *See Noble County Bank v. Waterhouse* (1929), 89 Ind.App. 94, 163 N.E. 119. We do not find within the language of the words "and borrowers" the degree of an unequivocal intent required to secure the several indebtedness of the parties.

We hold the trial court did not err in denying judgment against Mrs. Gibson personally and in denying foreclosure of the mortgage.

■ The second facet of this appeal concerns Gibson's counterclaim against the bank alleging fraud, negligence and breach of contract. We adopt the Court of Appeals statement of the procedural and factual history.

> "[W]e believe Gibson is claiming the Bank was involved in the unauthorized negotiation of several checks written either on one of Gibson's business checking accounts or to that account. Evidently, from December, 1970 through May, 1971, the manager of one of Gibson's stockyards, who was authorized to sign checks on the account, wrote and otherwise negotiated several checks (unsanctioned by the business) at the Bank and deposited the funds in his personal account. In addition, Gibson claims the Bank misappropriated a certain wire transfer of funds sent for Gibson's business when the Bank set off certain amounts to his checking account to cover overdraws. The Gibsons sought $500,-000 compensatory and $10,000,000 punitive damages on these claims.

"After the parties stipulated that certain of the checks were not actionable, the trial court granted partial summary judgment to the Bank on all counterclaims resting upon the remainder of the checks. Its reasoning relied upon a written release signed by Mr. Gibson and his perfidious employee by which Gibson received certain of the employee's assets in exchange for the employee's release from all further claims. The trial court granted summary judgment to the bank on the issue of the checks because it determined Mr. Gibson had elected his remedy by recovering restitution from the employee and was thereafter foreclosed from later pursuing recovery from the Bank.

\* \* \* \* \* \*

"The judge found that, because Mr. Gibson had signed a release in favor of the employee who improperly negotiated the checks in exchange for partial restitution of losses, Mr. Gibson had elected to pursue his recovery from the employee and was thereafter prevented from pursuing claims against the Bank. In so deciding, the trial court expressly relied on our decision in *V.H. Juerling & Sons, Inc. v. First National Bank of Richmond*, (1968) 143 Ind.App. 671, 242 N.E.2d 111...." *Citizens, supra* 463 N.E.2d at 278, 281.

In *Juerling* the court dealt with a factual pattern similar to the case at bar. A bookkeeper employed by a corporation systematically forged the signature of the owner of the corporation to checks made payable to herself. After the discovery of the deception, the corporation and the employee entered into a written agreement whereby the bookkeeper acknowledged her acts and agreed to turn over to the corporation virtually all of her assets. A few months later the corporation filed suit against the bank which had allegedly negligently paid over a forged signature. The trial court granted a summary judgment in favor of the bank involved. The Court of Appeals affirmed that judgment.

The Court of Appeals quoted 10 Am. Jur.2d *Banks*, § 508 (1963) for the proposition that two views exist on the question of whether a depositor who obtains judgment against either a bank or the receiver loses his rights against the other. The court adopted the view that a depositor has an election to proceed against either but if he chooses to proceed against the receiver and obtains a direct benefit then he is precluded from suing the bank. *See Juerling, supra.*

The Court of Appeals distinguished the case at bar from *Juerling* on the grounds *Juerling* involved restitution and not a written release. The Court concluded the case at bar must be resolved under the law concerning releases and not the law concerning restitution and the election of remedies.

Appellant, Citizens Bank, argues the Court of Appeals created a distinction in *Juerling* which is not supported by the language of the case. Appellant contends the rule of *Juerling* should be applied when the depositor has received a direct benefit, notwithstanding whether the benefit flows from an act of restitution or accompanies a release.

Appellees, arguing in behalf of the holding of the Court of Appeals, adopt the interpretation of *Juerling*. In addition they contend the result of the trial court's ruling on the issue of summary judgment has prevented the litigation of the issue of the intent of the parties to the release. They further point out the bank was not a party to the release and a material issue of fact does exist as to whether the release should also operate to have an effect on the bank. In essence they argue the question of the release and its effect is one which must be considered prior to a consideration of the question of an election of remedies. Accordingly, they maintain the trial court erred when it granted the summary judgment motion.

The question is whether the focus of *Juerling* is on the fact a direct benefit was received or on the mechanism through which the benefit was received. We hold it is on the former. It is the benefit which

serves to ratify the actions of the bank and create the election of remedies situation. *Juerling* distinguished its facts from other cases in Indiana by stating:

"At first blush, these cases seem to sustain the position of the appellant that it is not estopped from suing the defendant banks because it had previously elected to pursue the remedy of entering into an agreement with Josephine Coffman for the repayment of monies. However, in none of the above cited Indiana cases was there a situation like the one in this case where the plaintiff had received a benefit as the direct result of a choice of one remedy before he commenced another remedy." *Juerling*, 143 Ind.App. at 687, 242 N.E.2d at 120.

Gibson obtained a direct benefit from the forger prior to the time he filed suit against the bank. We find he elected his source of remedy and is precluded from bringing an action against the bank.

In all other matters we adopt the holdings of the Court of Appeals. The trial court is in all things affirmed.

DeBRULER, PIVARNIK and DICKSON, JJ., concur.

SHEPARD, J., dissents and would vote to affirm the decision of the Court of Appeals.