LUDLOW ET AL. *v.* FREE ET AL.

[No. 28,017. Filed June 14, 1944.]

*Arthur W. Parry* and *Merl A. Barns,* both of Fort Wayne, and *Porter D. Crowell,* of Kendallville, for appellants.

*Ralph W. Probst* and *Rex S. Emerick,* both of Kendallville, for appellees.

SWAIM, J.—This is an appeal from a judgment recovered by the appellees, Florence C. Free and Jack C. Free, the widow and son, respectively, of Carl C. Free, deceased, who died of silicosis, contracted while employed by the appellants as a stone cutter.

On May 5, 1939, the appellants and the appellees entered into a written contract of compromise and settlement which recited the death of Carl C. Free from silicosis; that the appellees were his dependents, and that whereas

"a controversy has arisen between the first party (the appellees) and second party (the appellants) as to the second party's liability and amount owe l by virtue of the disability and death of the cail Carl C. Free, and

"WHEREAS for the purpose of compromising the differences between said parties and reaching a settlement of said claim of first party against the second party,

"It is now therefore agreed in consideration of first party not filing any cause of action in any circuit court, or before the Industrial Board of the State of Indiana, except a petition known as form number 110, the said second party agrees to pay to first party the sum of thirty-seven hundred fifty dollars ($3,750.00) in full compromise settlement of all claims and demands of first party against the second party which may grow out of or exist by the death of the said Carl C. Free of his employment by second party. . . ."

The agreement then proceeded to provide for the method of the payment of said sum, for certain credits

thereon and that in the event of the termination of the dependency of Jack C. Free, prior to the completion of the payment of the entire amount, the amount being paid for him should then belong and be paid to the widow, Florence C. Free. It further provided that it was being executed between the parties "for the purpose of settling all differences, without further litigation and expense to each party, and shall be effective for all purposes. . . ."

On May 7, 1939, the parties filed with the Industrial Board of Indiana form number 110 which they had executed and which recited the facts of the decedent's employment, the relationship and the dependency of the appellees, the terms of the agreement for the payments of compensation and that the agreement had been made after negotiations in which the parties were represented by their respective attorneys.

The Industrial Board of Indiana refused to take jurisdiction of the matter for the reason that the appellants, as employers, had not expressed their intention of operating under the Indiana Workmen's Occupational Diseases Act by filing notice, in writing, of such election with the Industrial Board. § 40-2204, Burns' 1933 (1940 Replacement), § 16502, Baldwin's 1934 (1937 Supplement). At the time the agreement was made between the parties hereto neither the appellees nor their attorneys had any knowledge of the fact that the appellants had failed to comply with the provisions of said Occupational Diseases Act and that it would, therefore, be impossible for the Industrial Board to enter an award.

On being informed that the Industrial Board refused to take any action in the matter the attorney for the appellees had a conference with the attorneys for the appellants and demanded that the compromise agree-

ment be carried out. Speaking of this conference the attorney for the appellees testified "I told him my clients were expecting his clients to pay Three Thousand Seven Hundred and Fifty Dollars, less the credits and the surrendering of that note."

Q. "What did he say?"

A. "He said he didn't know what they was going to do, because the Industrial Board wouldn't have anything to do with it and I said that didn't make any difference, as I would file a suit at Albion, and we could stipulate the terms of the contract so his clients would be fully protected and he said he would let me know in a day or two." And again ". . . I made the statement I would file a common law action and we would stipulate the case, in order that his clients might be protected. There was a question of protection of the defendants on account of the minority of Jack Free." And again in redirect examination he testified ". . . the conversation that Mr. Crowell and I had was to the effect there would be a common law action filed and we would stipulate Plaintiffs' Exhibit 1 into a judgment, so everyone would be protected and . . . I so informed Mrs. Free."

In answer to the question "Did you state, Mr. Probst, that on this ocasion on May 25th that Mr. Crowell told you the reason why the defendants were not paying this Three Thousand Seven Hundred and Fifty Dollars was on account of the minority of Jack C. Free?" A. "Yes, that is one of the things we discussed, because his name had been signed to this contract by his mother and he was a minor." Q. "And that is when you told him that the contract could be amended and a common law case filed and the contract stipulated into the judgment so that his clients would be protected?"

A. "Yes, and Mrs. Free could be made administratrix."

Mrs. Free, shortly thereafter, moved her home to Omaha, Nebraska. She testified that before she left for Omaha she understood that the agreement would be carried out in some manner. The attorney for the appellant testified that he, in said conversation with the attorney for the appellee, ". . . perhaps stated as one reason for considering the contract as of no effect the fact that one of the plaintiffs was a minor and one of the principal purposes of this agreement and submission to the Industrial Board was in order to safeguard the defendants in this case from any further claims and liability on the part of this minor and that if there was no award made by the Industrial Board that the defendants here would be without that protection and in reply to that Mr. Probst suggested that this contract be submitted to the Noble Circuit Court on some petition for damages, or otherwise, and the terms and conditons of that contract be submitted to the Noble Circuit Court for judgment. . . ."

This conversation took place May 26, 1939, and without any further conversation between the attorneys or between the parties, a complaint for damages was filed on June 23, 1939. Appearance was entered for the defendants (appellants) and they were ruled to answer on or before October 2, 1939. On October 4, 1939, they filed a motion to strike out certain parts of the complaint which motion was sustained in part and they then filed a demurrer to the complaint, which was sustained. The plaintiffs (appellees) then filed an amended complaint in two paragraphs, one similar to the original complaint for damages for negligence and the other on the compromise agreement.

To this complaint in two paragraphs the appellants demurred on the ground that several causes of action had been improperly joined in said complaint. The demurrer was sustained by the court and the clerk was directed to docket the second paragraph of said complaint as a separate cause of action and the appellees were ordered to file a complaint in each of said causes forthwith. The judgment for which this appeal is prosecuted was rendered in the action on the contract. The other action for damages for negligence is still pending.

The appellants make two principal contentions in this appeal. In the first place they insist that the stipulation in the agreement that an award of the Industrial Board should be obtained was a vital condition of the contract and one which went to the very heart of the cause for which the appellants were contracting.

While the parties had a right to contract that an award by the Industrial Board should be a condition precedent to the liability of the appellants to pay, we have seen that said condition in this case was impossible of performance for the reason that the appellants had not complied with the provisions of the Indiana Workmen's Occupational Diseases Act in such a manner as to bring them within the act and give the Industrial Board jurisdiction. At the time the agreement was made appellants knew they had not taken the necessary steps to comply with said act and were bound to know that an award of the Industrial Board could not be procured. When a promisor stipulates in a contract for the performance of a condition which he then knows cannot be performed, and the impossibility of performance is unknown to the other party to the contract, the promisor must be held to have

intended to make himself absolutely liable without regard to the performance of the condition. 17 C. J. S. § 462 and cases there cited. See, also, *Kimball Milling Co.* v. *Greene* (1942), Court of Civil Appeals of Texas, 162 S. W. (2d) 991.

The principal contention urged by the appellants in this case, however, is that the appellees, by filing the action for damages for negligence, made an election of remedies by which they were precluded from thereafter maintaining an action on the contract.

The appellants contend for the application of a strict rule on election of remedies, a rule which would preclude a party having two inconsistent remedial rights, who has merely commenced an action to enforce one of such rights from thereafter maintaining an action on the other right even though the first action was dismissed before judgment or the original complaint was amended to present the alternative remedy. Appellants say that the mere commencement of the first action amounts to a binding election of remedies, even though there was no advantage to the plaintiff or detriment to the defendant, and even though the plaintiff was not put to an election by the defendant. Some decisions in other states seem to have gone that far.

There seems to be considerable confusion among the decisions as to the true basis for the doctrine of election of remedies. 28 C. J. S. pp. 1058-1060, 18 Am. Jur. pp. 130, 131. Some courts have said that the doctrine is but an application of the maxims of "he who seeks equity must do equity" and that "a person shall not be twice vexed for one and the same cause." Some courts have said that the doctrine is properly regarded as an application of the law of estoppel and that it will not be applied unless it is shown that the plaintiff

has derived a benefit or the defendants will suffer an injury from a failure to apply the doctrine.

Other courts, however, have said that the doctrine is applicable even though no benefit has been derived by plaintiff or wrong suffered by defendant. Still other decisions have referred to the doctrine of election of remedies as "waiver by election." *Brice* v. *Walker* (1920), 50 Cal. App. 49, 194 P. 721.

Some later cases have recognized the doctrine as a harsh rule and have attempted to confine its use within more narrow bounds. In *First National Bank of Osakis* v. *Flynn* (1933), 190 Minn. 102, 250 N. W. 806, the court said that the true purpose of the doctrine "is not to prevent recourse to any remedy but to prevent double redress for a single wrong."

In *National Lock Co.* v. *Hogland* (1939), 101 F. (2d) 576, the court said, "The formal doctrine of election of remedies by judicial decisions has been confined gradually to its true remedial purpose as a doctrine of substance; and as stated by an eminent authority on trusts and trustees, should be confined to cases 'where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied.' Bogart, Trusts and Trustees, 1935, Vol. IV, § 946."

We have found only three decisions of our court involving the question of election of remedy by a party plaintiff where the facts were similar to the facts in the instant case.

In *Nysewander* v. *Lowman* (1890), 124 Ind. 584, 24 N. E. 355, a complaint was filed to rescind a contract and was then amended to state an action for damages for fraud. Defendant's answer to the amended complaint stated that the plaintiff, by his original com-

plaint, had elected to rescind the contract of exchange and that by reason of such election was precluded from prosecuting his action for damages. In deciding against the defendants in that case this court said:

"Nor is it always true that the mere bringing of a suit for recission will bar an action for damages. (Citing cases.) It is no doubt true, as a general rule, that the prosecution of a suit for recission to judgment will preclude an action for damages. But even this rule is held not to be without exceptions. Where two actions are pending at the same time. an election may be compelled, and where expressly made it is ordinarily conclusive. (Citing case.) But where there is no election compelled by the action of the adverse party, and nothing more is done than to file a complaint for recission, and in the same proceeding so amend it as to make it a complaint for damages, there is no such act or conduct as concludes the plaintiff. . . ."

In *Cohoon* v. *Fisher* (1896), 146 Ind. 583, 44 N. E. 664, 45 N. E. 787, this court again said: ". . . the prosecution of one remedy must either be pending or have been prosecuted to final determination to bar or exclude another concurrent remedy for the same right.

"The amendment of the complaint superseded the original complaint. Therefore, the remedy invoked therein is not being prosecuted to determination. The exact question here involved was decided adversely to the contention of the appellee in *Nysewander* v. *Lowman*, 124 Ind. 584. . . ."

In an opinion denying a rehearing in this case, however, the court stated that where the first suit commenced is for a recission of the contract, its commencement is nothing more than a bare choice of remedies and that its commencement and abandonment are

not inconsistent with the continued subsistence of the contract, or a subsequent suit affirming such contract. The court recognized that courts of other states were not in harmony with this theory by saying, "There may be cases in other jurisdictions establishing a different rule, making the commencement of either suit first a conclusive choice of remedies without prosecution to final judgment. But we are of the opinion that the better rule is that established in this State, and we adhere to it."

In *McCoy et al.* v. *Stockman et al.* (1897), 146 Ind. 668, 46 N. E. 21, a large number of persons sued a warehouseman, alleging that the grain of the plaintiffs had been stored in said warehouse and intermingled, and sought to have the grain then remaining in the warehouse delivered to a receiver for disposition in order that they might share proportionately in the proceeds. Later nine of the plaintiffs dismissed as plaintiffs, were granted permission to become defendants, and then filed a cross-complaint alleging that their grain was of a certain kind, had been stored in a certain bin, had not been intermingled with the grain of the plaintiffs and that they as owners of the entire property in their said grain were entitled to the delivery thereof. To this cross-complaint the plaintiffs filed an answer alleging that the cross-complainants, with full knowledge of the facts alleged in said complaint and cross-complaint, had elected to join with the original plaintiffs and asked to recover with them as tenants in common and asked for the appointment of a receiver; and that said cross-complainants are, therefore, estopped to plead the matters set forth in their cross-complaint. The court held, however, that the action of the cross-complainants did not amount to a "choice or election of remedies so as to estop them

from becoming defendants and setting up the matters involved in their cross-complaint." As authority for this holding *Cohoon* v. *Fisher, supra,* was cited.

While there have been references to the doctrine of election of remedies in later cases in this court, *McCoy et al.* v. *Stockman et al. supra* is the last decision of this court which we have found in which the facts were similar to the facts in the instant case.

None of the above three decisions of this court would require us to hold that the action of the appellees in first filing a complaint for damages for negligence precluded them from later amending their complaint to present an action on the contract of compromise and settlement.

It is true that an action for damages on the original tort does negative the fact that a valid compromise agreement was later entered into and it is therefore true that an action on the original tort is inconsistent with an action on the contract which was entered into to compromise and settle the tort claim. The original tort action, however, was not prosecuted to a judgment. No advantage was gained by the appellees and no harm was suffered by the appellants. The appellants did not claim to have been misled to their detriment. There is no contention that the appellees at any time during these proceedings took any step to compel an election by the appellees.

The appellants do not contend that after the original complaint was amended to include a paragraph for negligence and a second paragraph on the contract there was any election of remedies by the appellees. The inclusion of the inconsistent actions in one complaint did not constitute an election of remedies and the action of the court in separating the actions, by having the two paragraphs docketed

separately, cannot be charged to the appellees. After the actions were separated the appellants are not shown to have taken any step to abate either action.

Election of remedies, as the name implies, imports an intentional, deliberate choice of remedies by the party making the election. While a party would not be permitted to choose one inconsistent remedy and prosecute an action thereon to a conclusion and then contend that he did not intend thereby to abandon or waive another inconsistent remedial right, we are not confronted with that situation in this case. Here there was sufficient evidence for the trial court to have found that the appellees, when the original tort action was filed, not only did not intend to waive their rights under the contract of settlement, but that they did not intend to prosecute the tort action to recover damages for negligence from the appellants. From the testimony and the record in this case the trial court was justified in finding that the original tort action was filed only for the purpose of furnishing a means of securing a binding judgment for the amount which the appellants had agreed by their contract to pay to the appellees; that the tort action, instead of negativing the contract, recognized the contract and was a method of carrying out its terms. The original complaint was in the regular form of a complaint for damages for negligence, but this is the type of complaint which the attorney for the appellees told the attorney for the appellants would be filed in order to provide a method for procuring a judgment which would be binding on the infant appellee. The fact that the attorney for the appellants did not expressly agree that this course of procedure should be followed is not controlling. It is the intention and purpose of

the party alleged to have made the election which is controlling.

When the appellants by their election to strike out parts of the complaint and by their demurrer, both filed on the same day, indicated that it would be impossible in the tort action to have a judgment stipulated which would embody the money payment agreed to in the contract of settlement, the attorney for the appellees then amended his complaint by including a paragraph on the contract. This conduct by the attorney for the appellees as shown by the record, his statements to the attorney for the appellants and the testimony of the adult appellee that it was her understanding that the contract was to be carried out in some manner, all taken together furnished a strong basis for a finding by the trial court that the filing of the original complaint did not constitute an election of remedies which would preclude the appellees from amending the complaint to include an action on the contract.

Here the parties entered into a contract, agreeing that the appellants were indebted to the appellees in a certain sum because of the death of Carl C. Free from disease contracted while employed by the appellants. It was their purpose by this contract to completely compromise and settle all claims which the appellees might hold against the appellants, whether existing by reason of a claim for damages for negligence or a claim for compensation under the Indiana Workmen's Occupational Diseases Act. The particular method of protecting the appellants against the infant appellee by an award of the Industrial Board was impossible of performance because of the fault of the appellants in failing to bring themselves under the act. The judgment from which this appeal is prosecuted will protect the appellants from further claims.

In *Rooker* v. *Fidelity Trust Co.* (1921), 191 Ind. 141, 161, 131 N. E. 769, we said "The doctrine of election of remedies is of equitable origin. It has no application to the circumstances of this case, for to apply it here would work to the great harm and loss of the appellee trust company and the unearned and undeserved large money benefits to appellants . . . ." So in the instant case it would seem to us to be inequitable to disturb the judgment which the appellees have recovered in this case and to hold that they are precluded from a recovery on the contract of settlement which was entered into by all parties in good faith. To hold otherwise would be to permit a doctrine of equitable origin to be used to accomplish an inequitable result.

The appellants have relied on cases from other states and cases from the Indiana Appellate Court to support their contentions on the election of remedies. While they have quoted language apparently favorable to their contention from opinions of the Appellate Court, the facts of most of those cases are distinguishable from the facts in the instant case.

In *American Car etc. Co.* v. *Smock* (1910), 48 Ind. App. 359, 91 N. E. 749, a defendant having secured and retained a release from the plaintiff was held not to be in a position, in an action to recover part of the consideration for the release, to deny that the contract by which the release was obtained was its contract. The court said that this was on the theory of estoppel by election and then stated a broad rule on the election of remedies.

In *Nave* v. *Powell* (1916), 62 Ind. App. 274, 110 N. E. 1016, while the court used some language favorable to the contention of the appellants, it was held that there had been no election of remedies in that case because there had actually been only one remedy avail-

able and as the court said "The doctrine . . . has no application where a party erroneously thinks he has a remedy that does not in fact exist . . . ."

In *Pittsburgh Plate Glass Co.* v. *Young* (1926), 84 Ind. App. 313, 151 N. E. 227, the court said that when a contract is repudiated by one party the other party may elect to treat the contract as breached and sue for damages suffered by reason of such breach, "And when he does so elect, and brings his action based upon the remedy which he has elected, with knowledge of the facts, and of his rights, he may not thereafter maintain his action upon an alternative remedy which is inconsistent with the remedy which he has elected to follow." In that case the court was speaking of the adoption by the plaintiff of an "inconsistent theory" twenty-two years after his right of action accrued and nine years after he had elected to prosecute another remedy.

In *Kimmel* v. *Captain et al.* (1940), 107 Ind. App. 621, 24 N. E. (2d) 435, the court defined what constituted inconsistent remedies but held that since the remedies in that case were not inconsistent there was no basis for the application of the doctrine of election of remedies.

In *National Hame and Chain Co.* v. *Robertson* (1928), 90 Ind. App. 556, 161 N. E. 851, while the facts were not similar to the facts in the instant case, the court there, in speaking of election of remedies, said, "A choice of remedies is not binding on a party plaintiff unless the remedy chosen has been prosecuted to a conclusion." As authority for this statement the court cited *Cohoon* v. *Fisher, supra*.

We find no reversible error. The judgment is affirmed.

NOTE.—Reported in 55 N. E. (2d) 318.