**FARMERS STATE BANK OF WYATT,**
**Appellant–Plaintiff,**

v.

**CLARK EQUIPMENT COMPANY,**
**Appellee–Defendant.**

**No. 50A03–9106–CV–168.**

Court of Appeals of Indiana,
Third District.

Dec. 12, 1991.

Thomas R. Lemon, Bradley J. Tandy, Kirk A. Weikart, Rasor, Harris, Lemon & Reed, Warsaw, for appellant-plaintiff.

Philip A. Whistler, Michael J. Lewinski, Ice, Miller, Donadio & Ryan, Indianapolis, Jere L. Humphrey, Kizer, Neu, Joyce, Wyland, Humphrey, Wagner & Gifford, Plymouth, for appellee-defendant.

HOFFMAN, Judge.

Appellant-plaintiff Farmers State Bank of Wyatt appeals the trial court's grant of summary judgment to appellee-defendant Clark Equipment Company.

The facts relevant to this appeal disclose that on October 6, 1984, Farmers State Bank (Bank), pursuant to a commitment letter, agreed to provide Sharemar, Inc., d/b/a Macrotronix (Macrotronix), a revolving line of credit in an amount not to exceed $750,000.00. On November 1, 1984, Macrotronix delivered a promissory note and security agreement to the Bank for the line of credit. The note was due on November 1, 1985.

Clark Equipment Company (Clark) entered into a guaranty agreement with the Bank guaranteeing Macrotronix's line of credit. Clark's guaranty extended to all loans made to Macrotronix that were required to be paid on or before October 31, 1985.

The Bank entered into a participation agreement with Valley American Bank (Valley) whereby the Bank sold the majority of its interest in the Macrotronix loan to Valley. Valley paid the Bank $547,558.77. Neither Macrotronix nor Clark was a party to the participation agreement.

When the loan came due at the end of October 1985, a vice president with the Bank, Spartaco Casini, extended the loan with Macrotronix for another year. In the middle of November, Clark learned of the Bank's loan extension agreement with Macrotronix and notified the Bank that it had never been informed of or consented to such extension. The president of Farmers, Thomas Boyd, confronted Casini regarding the loan extension agreement that did not have a guarantee by Clark and Casini admitted he had "made a mistake." Internal Bank memoranda then described the Clark guarantee as "null and void."

At the end of the extension period in October 1986, Macrotronix was unable to repay its loan. It declared bankruptcy, and the Bank ultimately recovered approximately $66,621.29 from setoffs and from the sale of collateral.

In April 1987, the Bank filed a complaint against its former vice president, Spartaco Casini. The Bank alleged that Casini's negligence and breach of duty in extending Macrotronix's loan caused the Bank to lose Clark's guarantee on the loan. Casini had an officers' liability insurance policy through Western Employers Insurance Company (Western). Therefore, Western entered the litigation on behalf of Casini.

On June 17, 1987, Valley filed a lawsuit against the Bank alleging that the Bank had breached the participation agreement by failing to insure the enforceability of Clark's guaranty. Valley alleged that the Bank had indicated that it would not take any action against Clark on the guaranty. Valley sought damages of $547,558.77 plus interest.

Thereafter in September 1987, a settlement agreement was entered into ceasing litigation in the Bank's action against Casini and in Valley's action against the Bank. The Bank agreed to compensate Valley $400,000.00 in return for settlement of the litigation. Western agreed to contribute 59.6% towards the settlement, totaling $238,400.00, leaving the Bank with an unpaid balance of $161,600.00. Western then agreed to settle the Bank's action against Casini for $81,689.50. The Bank and Western agreed to commence action against Clark on the guaranty, whereby Western would receive 59.6% of the net recovery, until it was made whole.

In May 1988, the Bank commenced an action against Clark on the guaranty. The trial court granted Clark's motion for summary judgment.

One issue is dispositive of this appeal: whether the Bank is barred from pursuing Clark under the doctrine of election of remedies.

The trial court's judgment will be affirmed if sustainable on any theory or basis found in the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 157.

▮ As the court in *Burrus v. American Casualty Company*, 518 F.2d 1267, 1269 (7th Cir.1975) noted: "The law is clear in Indiana that where a party has two coexisting but inconsistent remedies and elects to prosecute one such remedy to a conclusion, he may not thereafter sue on the other remedy." This doctrine is termed election of remedies. Election of remedies is of equitable origin, "and it does not apply unless there are two or more coexistent remedies available to the litigant at the time of the election, from which a choice may be made, and one of which is chosen by the litigant." I.L.E. *Election of Remedies* § 1, p. 344 (1958).

In this case, the Bank chose to pursue its vice president for jeopardizing the guarantee on the Macrotronix loan. The Bank, in its complaint, stated: "As a result of Casini's actions in unilaterally, without prior approval from the Board, erroneously, negligently, and in breach of duty to Farmers State Bank, extending the Loan with Ma-

crotronix and thereby releasing Clark Equipment Company from its Guarantee, Farmers State Bank will suffer damages equal to the difference between the amount of Clark's Guarantee and the amount realized upon liquidation of the assets of Macrotronix...." Clearly, the Bank was alleging damages as a result of the release of Clark from its guarantee on the Macrotronix loan. The Bank also indicated to Valley that it had released Clark from the guarantee. In fact, this was the basis of Valley's lawsuit against the Bank.

▮ The Bank then settled the case with Casini's insurer, Western, and Valley. However, the Bank argues that it did not elect remedies because in the settlement agreement it agreed to join with the insurer, Western, and pursue Clark on the guaranty in an attempt to recoup its losses, as well as the insurance company's. The Bank overlooks the fact that it was able to recover under Casini's insurance policy due to Casini's negligence in releasing Clark from the guarantee. If Clark was not released from its guarantee, then the Bank was not damaged by Casini's action and Casini's insurer had no reason to compensate the Bank. However, the Bank proceeded on the theory that Clark had been released from its guarantee as a result of Casini's negligence to a settlement, and now, after recovering on this theory, attempts to pursue Clark on the opposite theory that Clark was never released from the guarantee. The Bank elected its remedy and may not now choose to pursue the inconsistent remedy.

The Bank argues that a settlement should not be deemed a conclusion to the lawsuit and that only a final judgment would constitute an actual conclusion. In support of its argument, the Bank cites many Indiana cases. However, these Indiana cases have very different factual situations. For instance, in *Ludlow v. Free* (1944), 222 Ind. 568, 55 N.E.2d 318, the court agreed that "a party would not be permitted to choose one inconsistent remedy and prosecute an action thereon to a conclusion and then contend that he did not intend thereby to abandon or waive another

inconsistent remedial right[.]" *Id.* at 580, 55 N.E.2d at 323. The *Ludlow* court was faced with a situation in which plaintiffs wished to amend their complaint. Upon breach of a compromise agreement, the plaintiffs had filed a suit on the original tort action, but then amended the complaint to include a count for breach of the settlement agreement. While it is true that these two theories were inconsistent, the plaintiffs had not prosecuted the original tort action to a conclusion, but instead had amended their complaint. As stated by the court "[t]he inclusion of inconsistent actions in one complaint did not constitute an election of remedies...." *Id.* at 579, 55 N.E.2d at 323. *See also* I.L.E. *Election of Remedies* § 3, p. 347 (1958). Therefore, the *Ludlow* court permitted the amendment, noting that the amendment did not cause harm to the defendants or any advantage to the plaintiffs.

Similarly, the other cases cited by the Bank do not involve an election of remedies. The plaintiff in *Nysewander v. Lowman* (1890), 124 Ind. 584, 24 N.E. 355, originally filed a complaint to rescind a contract, but then amended the complaint to sue for damages based on the contract. The court held that "where there is no election compelled by the action of the adverse party, and nothing more is done than to file a complaint for recission, and in the same proceeding so amend it as to make it a complaint for damages, there is no such act or conduct as concludes the plaintiff." *Id.* at 591, 24 N.E. at 356.

Likewise, the plaintiff in *Cohoon v. Fisher* (1896), 146 Ind. 583, 44 N.E. 664, was allowed to amend the original complaint, which sought recission of the contract, to seek to recover damages. The court explained that the amendment of the complaint superseded the original complaint. Therefore, the original complaint was not prosecuted to a determination. *Id.* at 584, 44 N.E. at 665. In an opinion denying rehearing, the court declined to establish a rule that makes the mere commencement of an action a choice of remedies but stated that a party may not take contradictory positions. In other words, the " 'deliberate and settled choice of one, with knowledge,

or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' " *Id.* at 587, 44 N.E. at 787, 788.

In *McCoy et al. v. Stockman et al.* (1897), 146 Ind. 668, 46 N.E. 21, the plaintiffs originally joined in the action against a warehouseman, who had intermingled their grain, to have a receiver appointed to dispose of the grain and apportion the proceeds. However, nine of the plaintiffs were dismissed and granted permission by the court to become defendants, and then filed a cross-complaint alleging that their grain was of a certain kind, had been stored in a certain bin, had not been intermingled with the grain of the plaintiffs and that they, as owners of the entire property, were entitled to delivery thereof. The remaining plaintiffs attempted to have the cross-complainants estopped from proceeding further due to their previous stance in the suit. The court, citing *Cohoon, supra*, held that the action of the cross-complainants did not amount to a choice or election of remedies.

The above cases all deal with situations in which the plaintiffs made changes in the theories of their litigation at the commencement of the action. The Bank in this case pursued its theory of release of the guarantee to the conclusion of the case at settlement. Then at settlement, after recovering money from Casini's insurer, agreed to join forces with the insurer to pursue Clark on the inconsistent theory that the guarantee was still in effect and Clark had not been released by Casini's actions. After proceeding to a conclusion of the case against Casini, the Bank clearly had chosen its remedy.

Although the Bank argues that settlement should not be a bar to initiating a new action on a different and inconsistent theory, the court in *In re J.A.M.A.* (2nd Cir. 1937), 92 F.2d 3 held otherwise. *J.A.M.A.* involved a bank customer who sued the bank under the theory that the bank's officer loaned $75,000.00 of the customer's money to a third person without the customer's authority to do so. The suit was

settled after the bank agreed to pay the customer $45,000.00. The customer then filed a claim in the bankruptcy action of the third person for $75,000.00 on the theory that the loan was made by the bank officer as the customer's agent. In holding the plaintiff's election of remedies precluded the bankruptcy claim, the court stated:

> "It is difficult to find any distinction between a settlement which allowed Mrs. Dixon [plaintiff] a claim as a general creditor of the Bank (though in a sum less than that claimed) and a court judgment with partial satisfaction. She could have a claim as a depositor only on the theory that Harriman [bank's officer] was not her agent in drawing the $75,-000. check which the Bank honored. Having maintained this position against the Bank so successfully as to obtain a substantial sum (conceded in the briefs to be 76 per cent dividends on the conceded claim of $45,000.), she now takes the wholly inconsistent position of asserting against the bankrupt that Harriman was her agent in withdrawing the $75,-000. from the Bank.
>
>   *   *   *   *   *   *
>
> The two claims are mutually exclusive; either may exist but not both together. They are alternative substantive rights between which Mrs. Dixon might choose when she learned that Harriman had acted beyond his authority as her agent. If she elected to ratify his act, she would have a contract with Jama [bankrupt] but none with the Bank; conversely, if she elected to disaffirm his act, she would have a contract with the Bank but none with Jama. Often what is referred to as an election of remedies is in reality, as here, a choice between alternative substantive rights.
>
>   *   *   *   *   *   *
>
> In our opinion, Mrs. Dixon's suit against the Bank pursued to settlement was an election of remedies which precludes allowance of her proof of claim against the bankrupt."

*Id.* at 7–8.

This analysis can be applied with equal force here. The Bank, by suing Casini, expressly alleged and affirmed that Clark's guaranty was released. The invalidity of the guaranty was an essential prerequisite to the Bank's recovery against Casini. By prosecuting its suit against Casini to a settlement, the Bank has unambiguously asserted that Clark's guaranty is invalid, and by so doing, has elected its remedy and may not now sue Clark on the theory that the guarantee remains in effect.

■ Although there is dispute between the Bank and Clark as to the percentage of recovery had by the Bank pursuant to the settlement, the Bank alleging a mere 19.8% and Clark alleging a substantial 70% recovery, this is not the crux of the case. Nor was it the crux of the *J.A.M.A.* case. While it is true that the plaintiff in *J.A.M.A.* made a substantial recovery in her original suit, the point remains that she had elected her remedy by pursuing the bank originally to settlement. So whether the Bank in this case actually only recovered 19.8% of its losses or whether it recovered a substantial portion amounting to 70%, the Bank elected its remedy when it pursued Casini to settlement.

■ The Bank also attempts to claim that pursuing Casini was a mistaken selection of remedy. In *Nave v. Powell* (1916), 62 Ind.App. 274, 110 N.E. 1016, the trial court held that a plaintiff who erroneously pursues a remedy that does not in fact exist will not be estopped from pursuing an appropriate remedy. However, the Bank did not pursue a remedy that did not in fact exist in this case. Furthermore, it is hard to believe that Casini's insurer would offer to pay in settlement on a claim that does not exist.

Additionally, this case is not similar to *Fast v. Judy* (1925), 83 Ind.App. 85, 147 N.E. 728, in which the plaintiff did not have full knowledge of the facts and rights when he brought his first action. The *Fast* court reasoned that the plaintiff's mistake of the facts and his rights did not preclude him from prosecuting an action based upon an entirely different and inconsistent remedy. There is no evidence that the Bank

was unaware of the facts or its rights in this case.

The Bank also attempts to analogize its case with that of *New York Central Railroad Company v. Churchill* (1966), 140 Ind.App. 426, 218 N.E.2d 372. In that case, there was a collision involving the appellant's train and appellee's tractor-trailer unit. The appellee collected from its insurance carrier and then pursued the appellant for damages not compensated by the insurance. The Court held that appellee had not elected its remedy by pursuing its own insurance first. "The same event was affirmed as the basis for each procedure, i.e., the damage caused by the appellant. There is nothing inconsistent or repugnant between such actions." *Id.* 218 N.E.2d at 375. In this case, the Bank pursued the insurance policy for *its bank officer*, Casini, on the basis of Casini's negligent acts. This is clearly different from the situation in *Churchill* where appellee collected monies from its own insurance company before proceeding against the culpable party.

■ Lastly, the Bank asserts that before the doctrine of election of remedies may apply, it must be determined whether Clark was harmed or misled to its detriment by the suit against Casini. The cases cited by the Bank do not support this assertion. In *First National Bank of Osakis v. Flynn* (1933), 190 Minn. 102, 250 N.W. 806, the court followed the rule that "one who has voluntarily chosen and carried into effect an appropriate legal remedy, with knowledge of the facts, and of his rights, will not, in general be allowed to afterwards resort to an inconsistent remedy, involving a contradiction of the grounds upon which he proceeded." *Id.* 250 N.W. at 807. However, the court in *Flynn* determined that the plaintiff had merely initiated an action but had not finally chosen, and carried into effect, an appropriate remedy. The court believed that mere commencement is not an election of remedies unless the action is carried to its conclusion. "[A] party should not be bound by an election unless he has pursued the chosen course to a determinative conclusion *or* has procured advantage

therefrom, *or* has thereby subjected his adversary to injury." *Id.* 250 N.W. at 808 (Emphasis added.). Therefore, since the Bank carried its action against Casini to a determinative conclusion, a determination need not be made as to whether the Bank gained an advantage or subjected Clark to injury. This determination is reserved for an action that has not been pursued to a conclusion.

*See also Silber v. Gale* (1930), 38 Ohio App. 248, 175 N.E. 886; *Ludlow, supra.*

The trial court correctly granted summary judgment to Clark and, therefore, is affirmed.

Affirmed.

MILLER and RUCKER, JJ., concur.