CIRCUIT CITY STORES, INC., Appellant–Defendant,

v.

AMERICAN NATIONAL INSURANCE COMPANY, Appellee–Plaintiff.

No. 49A02–0204–CV–299.

Court of Appeals of Indiana.

Nov. 22, 2002.

Julia Blackwell Gelinas, Thomas F. Bedsole, Allison S. Avery, Locke Reynolds, LLP, Indianapolis, IN, Attorneys for Appellant.

John S. Mercer, Jennifer R. Gordon, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Circuit City Stores, Inc. ("Circuit City") appeals the trial court's grant of summary judgment in favor of American National Insurance Company ("American National"). Circuit City raises one issue on appeal, which we restate as whether the trial court improperly determined that "substantial completion" of a project did not occur until a tenant provided a "certificate of substantial completion and compliance," when the contract between the landlord and tenant required no such document and instead required a "certificate of occupancy" that could not be obtained because such certificates were not being issued at the time by the city where the building was located. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On April 15, 1997, Circuit City and American National entered into a contract whereby Circuit City would renovate a building owned by American National to create a new store. Pursuant to the contract, American National was to pay Circuit City a tenant improvement allowance ("TIA") within thirty days after "substantial completion" of the project. In the contract, substantial completion was defined as:

Substantial completion of the Tenant Work ("Substantial Completion") shall be deemed to occur when a certificate of occupancy, whether temporary and subject to minor items to be completed, or permanent, as the case may be, has been issued by the applicable governmental authority and Tenant's in-house architect or construction supervisor delivers to Landlord a certificate of substantial completion certifying that the Tenant Work has been substantially completed in accordance with the Plans and Specifications approved by Landlord.

(Appellant's App. at 75.) In addition, the contract provided:

If Landlord fails to pay the [TIA] in full within thirty (30) days after Substantial Completion and receipt of [certificates of insurance], [an indemnity form for possible mechanics' liens] and [confirmation that landlord holds title to the Improvements], Landlord shall be in default thereunder, no Ground Rent, Base Rent or Cam Charges shall be due or owing to Landlord until the same is paid to Tenant, and interest shall accrue on the unpaid [TIA] at the Default Rate commencing on the thirty-first (31st) day following Substantial Completion until the date of payment of the [TIA].

(*Id.* at 76.)

On October 7, 1997, Roger Sautter, an independent contractor working as Circuit City's project manager, completed a "Certificate of Completion and Compliance," which builders must submit to the City of Indianapolis to certify that construction is completed on a job for which a building permit was previously acquired. (Appellee's App. at 34.) Sautter did not submit that document to the City of Indianapolis at that time.

On November 11, 1997, Bruce Lucas, Circuit City's in-house architect, determined that the project was substantially complete. On that day, Circuit City submitted a TIA application ("the application") to American National. The application included a certificate of insurance, an executed indemnification agreement, an executed bill of sale, a certification from Lucas that the premises were substantially completed according to the plans and specifications, and an "As Built Survey." (Appellant's App. at 128.) The application did not include a certificate of occupancy. Circuit City believed that it had met the requirements for the TIA on November 11, 1997.

At some point in October or November, Circuit City began occupying the store and stocking it with merchandise. On November 24, 1997, the store opened for business. On January 28, 1998, American National paid the TIA.

On February 12, 1998, James DeStefano, an architect with Graycor Construction Co., LLC who worked on the project, filed a Statement of Substantial Completion and Request for Inspection with the Indiana State Building Commissioner. Also on February 12, 1998, Sautter sent to the Indianapolis Division of Permits the "Certificate of Completion and Compliance," which he had filled out on October 7, 1997. (Appellee's App. at 34.)

On March 31, 1998, Circuit City notified American National that it would not pay rent for the time that it believed American National had been in default, from December 11, 1997 to January 28, 1998. In addition, Circuit City notified American National that it intended to set off $40,199.00 in default interest against the amounts due for unpaid rent.

On October 21, 1999, American National filed a complaint claiming that Circuit City had breached its contract by refusing to pay rent and by setting off the default interest. Circuit City filed an answer. The parties filed cross-motions for summary judgment. The trial court granted summary judgment for American National. In ordering summary judgment for American National, the trial court made the following findings:

1. The undisputed facts as shown by the pleadings submitted by Plaintiff and Defendant, the depositions and the Memorandums of Law in Support of the Plaintiff's Motion for Summary Judgment and in Response to Defendant's Cross-Motion for Summary Judgment, and Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judg-

ment show that there are no genuine issues of material facts and Plaintiff is entitled to judgment as a matter of law.

2. Circuit City breached the Lease Agreement by offsetting ground rent due and owing to [American National] after [American National] had timely paid the TIA pursuant to Circuit City's Substantial Completion of the project; Circuit City's breach was the first breach of the Lease Agreement.

3. The language of the Lease Agreement required that Circuit City comply with the requirements of the Indiana Administrative Code 675 IAC 12–1–24 and the Indianapolis Municipal Code § 8–50 with regard to determining the point of "Substantial Completion."

4. Even after [American National] paid the TIA to Circuit City, Circuit City still failed to render payment of ground rent to [American National]. Circuit City was not entitled to offset the charges of ground rent against the TIA unless the TIA was not paid within 30 days of substantial completion.

5. Ground rent is due and owing to [American National] by Circuit City for December 11, 1997 through [January] 28, 1998 because [American National] paid the TIA within the allowable time frame according to the provisions of the Lease Agreement.

6. [American National] was not obligated to remit the [TIA] until thirty (30) days after February 12, 1998, the date that Circuit City submitted the Certificate of Completion and Compliance and the Statement of Substantial Completion to the proper governmental authorities.

7. Substantial Completion occurred on February 12, 1998, after Circuit City had complied with the Indiana Administrative Code and the Indianapolis Municipal Code provisions.

8. [American National] paid the [TIA] on January 28, 1998, fifteen (15) days prior to the date of Substantial Completion. Circuit City is in breach of the Lease Agreement for failing to timely pay rent due [American National] in the sum of $55,211.84 plus prejudgment interest at the rate of 15% (as specified in paragraph 4(a)(iv), paragraph 9(b) and Exhibit C, paragraph (1)(P)) and reasonable attorney fees to be determined by the Court.

9. No material issue of disputed fact exists, the matter may be decided as a matter of law and summary judgment is entered in favor of [American National].

(Appellant's App. at 3–4.) This appeal ensued.

## DISCUSSION AND DECISION

The sole issue on appeal is whether, for purposes of the contractual TIA provision, the "substantial completion" of this project could not have occurred until Circuit City provided a "certificate of substantial completion and compliance," when the contract required no such document and instead required a "certificate of occupancy" that Circuit City could not obtain because the City of Indianapolis did not issue such certificates at that time. On appeal from a grant of summary judgment, we apply the same standard applied by the trial court. *Ind. Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind.Ct.App.2000). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C). In our review, we do not reweigh the evidence, and we consider the facts in the light most favorable to the nonmovant. *Blaskie,* 727 N.E.2d at 15. The appellant has the burden to prove that the trial court erred when it determined that there were no issues of material fact

and that the appellee was entitled to judgment as a matter of law. *Id.*

Where, as here, the trial court entered findings of fact in its summary judgment order, those findings do not control us. *City of Gary v. Ind. Bell Telephone Co.,* 732 N.E.2d 149, 153 (Ind.2000), *reh'g denied.* Rather, we may use those findings to aid our interpretation of the trial court's decision. *Id.* In addition, where, as here, the parties filed cross-motions for summary judgment, our standard of review is not altered. *Id.* We merely "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Id.*

■ Circuit City claims that the trial court improperly interpreted the clear, unambiguous language of the contract between the parties. Interpretation of the language in a contract is a question of law especially suited for summary judgment proceedings. *Art Country Squire, L.L.C. v. Inland Mortgage Corp.,* 745 N.E.2d 885, 889 (Ind.Ct.App.2001). We review questions of law *de novo,* and therefore we give no deference to the trial court's interpretation. *Id.* We determine the meaning of a contract from an examination of all of its provisions, without giving special emphasis to any word, phrase or paragraph. *Id.* Our goal is to give effect to the intent of the parties as expressed within the four corners of the document. *Id.* We may not construe unambiguous language to give it anything other than its clear, obvious meaning, and we may not add provisions to a contract that were not placed there by the parties. *Id.*

■ The dispute in this case centers around when the project was substantially completed such that the thirty-day time limit began to run on American National's obligation to pay the TIA to Circuit City. Under the contract, American National was required to pay the TIA "within thirty (30) days after Substantial Completion and receipt of [three] items" by American National. (Appellant's App. at 76.) The three items at issue were a certificate of insurance, an indemnity form for possible mechanics' liens, and a confirmation that American National holds title to the improvements that had been made by Circuit City. The designated evidence indicates that those documents were attached to the application submitted on November 11, 1997. Consequently, we must determine when "Substantial Completion" occurred.

Under the contract, "Substantial Completion" occurred "when a certificate of occupancy has been issued by the applicable governmental authority and [Circuit City's] in-house architect or construction supervisor delivers to [American National] a certificate of substantial completion." (*Id.* at 75.) Although the TIA application included a certification from Circuit City's in-house architect that the project was substantially complete, a certificate of occupancy was not submitted with the application.

Circuit City asserts that it was impossible to obtain a certificate of occupancy.[1] Both parties acknowledge that Indianapolis did not issue certificates of occupancy at the time that Circuit City submitted its TIA application to American National. Consequently, we must agree with Circuit City's claim that it was impossible to obtain a certificate of occupancy. The question becomes what effect that has upon the requirements for the TIA application.

---

1. The contract did not define "certificate of occupancy." Black's Law Dictionary defines a certificate of occupancy as "[a] paper certifying that premises complied with provisions of zoning ordinance." Black's Law Dictionary 286 (4th ed. rev.1968).

Because a certificate of occupancy was impossible to obtain, Circuit City argues, its application was complete when on November 11, 1997 it had filed all other required items with American National. American National claims, and the trial court held, that Circuit City's TIA application was not complete until February 12, 1998. On that date, Circuit City filed with the City of Indianapolis, pursuant to Indianapolis Municipal Code § 8–50, a Certificate of Completion and Compliance. That same day, Circuit City also filed with the Indiana State Building Commissioner, pursuant to 675 Ind. Admin. Code 12–1–24, a Statement of Substantial Completion.

Section 8–50 of the Indianapolis Municipal Code provides that when a builder has completed construction for which a building permit had been issued and prior to occupying the building, the builder shall submit a certificate of completion and compliance. 675 IAC 12–1–24 provides that "for the purposes of [the Fire Prevention and Building Safety] rules," when local ordinances do not require the issuance of certificates of occupancy, a builder should submit a statement of substantial completion to the owner of the building and to the state building commissioner in lieu of a certificate of occupancy.

██ We do not believe that the certificate required by Indianapolis Municipal Code § 8–50 is a substitute for or interchangeable with the certificate of occupancy called for in the contract. That code section refers to what the builder must file when construction is *completed.* The term "substantial completion" clearly refers to some point prior to final completion. Further, even if it had submitted a certificate of completion and compliance pursuant to this section of the Indianapolis Municipal Code, Circuit City would not have received a "Certificate of Occupancy," which document American National claims was necessary to obtain substantial completion. Consequently, the trial court in effect imposed a requirement on Circuit City that was not imposed by the contract—i.e., that Circuit City file a certificate of completion and compliance. As trial courts may not read into a contract requirements that were not agreed to by the parties, the trial court erred when it determined the filing of that document determined the date of "substantial completion." *See Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 669–670 (Ind.1997) (trial court erred when it granted summary judgment because its ruling changed the requirements provided by the contract).

Further, 675 IAC 12–1–24 permits a builder's "statement of substantial completion" as a substitute for a certificate of occupancy *"for the purposes of these* [Fire Prevention and Building Safety] *rules"* (emphasis supplied). It does not provide, or even suggest, that such a document will substitute for a certificate of occupancy in any other context. If American National and Circuit City had contemplated that another document might substitute for a certificate of occupancy, then the contract could have been written to include such language.

Because the contract did not contain such language, the trial court erred when it determined "The language of the Lease Agreement required that Circuit City comply with the requirements of the Indiana Administrative Code 675 IAC 12–1–24 and the Indianapolis Municipal Code § 8–50 with regard to determining the point of 'Substantial Completion.'" *See Guzorek,* 690 N.E.2d at 669–670. Consequently, the dates upon which Circuit City filed those documents do not determine when Circuit City's TIA application was complete. The parties do not dispute that it was impossible for Circuit City to obtain a certificate of occupancy. Therefore, Circuit City's

TIA application was complete on November 11, 1997 when Circuit City submitted to American National all of the other required documents called for in the contract.

American National offers two additional arguments that the trial court's grant of summary judgment was not erroneous. First, American National notes that Circuit City drafted the contract provision at issue and argues Circuit City therefore may not assert that production of a certificate of occupancy was impossible. Second, American National claims that Circuit City is obliged to fulfill the requirements of 675 IAC 12–1–24 and Indianapolis Municipal Code § 8–50 because its contract required the parties to "comply with all lawful requirements of local, county, state . . . and any other governmental authorities with jurisdiction over the Improvements." (Appellant's App. at 58.)

### 1. The Impossibility Defense[2]

■ American National's argument that Circuit City may not assert impossibility is premised on *Ludlow v. Free*, 222 Ind. 568, 574–75, 55 N.E.2d 318, 321 (Ind. 1944):

> When a promisor stipulates in a contract for the performance of a condition which he then knows can not be performed, and the impossibility of performance is unknown to the other party to the contract, the promisor must be held to have intended to make himself absolutely lia-

ble without regard to the performance of the condition.

Based upon this authority, American National asserts that Circuit City should be "absolutely liable for the issuance of a certificate of occupancy." (Br. of Appellee at 7.) Circuit City replies that "there is no evidence that Circuit City knew that it would be impossible to obtain a certificate of occupancy at the time the Agreement was signed." (Reply Br. of Appellant at 5.) We find no designated evidence to suggest that Circuit City, a Virginia corporation, knew it would be impossible to obtain a certificate of occupancy.

In addition, the facts in this case are distinguishable from those in *Ludlow*, wherein the party claiming impossibility was responsible for creating a fact situation under which performance was impossible. *Ludlow*, 222 Ind. at 574, 55 N.E.2d at 321. Here, there were no steps that Circuit City could have taken that would have caused Indianapolis to issue a certificate of occupancy, and there is no evidence Circuit City knew such a document could not be obtained.

Strict application of the rule from *Ludlow* in this situation would mean that Circuit City could never achieve substantial completion and therefore could never receive the TIA. That would grant an inequitable windfall to American National, who would never have to pay Circuit City for the improvements that were made to American National's property. For all

---

**2.** The summary judgment addressed only the question of the date of substantial completion. It did not address, nor do the parties on appeal, the effect on the remainder of the agreement of the breach of or impossibility to perform the contractual requirement that a "certificate of occupancy" be obtained. Accordingly, we do not address whether the impossibility of performance of that provision might obviate the other requirements of the TIA provision of the contract. We note gener-

ally, however, that where, as here, the failure to obtain a proper permit appears to be an oversight and there is no evidence the building is not, in fact, in compliance with the applicable code provisions, the failure to obtain a permit is not a sufficient basis to declare void the remainder of the contract. *See Ethyl Corp. v. Forcum–Lannom Assocs.*, 433 N.E.2d 1214, 1221 n. 7 (Ind.Ct.App.1982), *reh'g denied.*

these reasons, we decline to hold that Circuit City is "absolutely liable" for obtaining the certificate of occupancy.

### 2. *Compliance with Other Contractual Language*

■ Regarding American National's second argument, the language in Paragraph 33 of the contract requires Circuit City to comply with any lawful requirements placed by governmental authorities upon persons making improvements. In addition, that paragraph provides that either Circuit City or American National has thirty days to become compliant after being given notice by any governmental authority or the other party that it is not in compliance.

The paragraph provides a remedy in the event that a party does not become compliant within thirty days. If the non-compliant party "fails to perform or diligently commence performance of same with reasonable promptness," the other party "may perform said work" and either deduct from or add to "the next installment or installments of Base Rent" "the reasonable cost thereof plus interest at the Default Rate." (Appellant's App. at 45.)

American National is correct that Circuit City was required to comply with all lawful requirements, including that of submitting a Certificate of Completion and Compliance under Indianapolis Municipal Code § 8–50. However, the fact that Paragraph 33 of the contract required Circuit City to submit that document does not mean that Circuit City was required to submit that certificate to fulfill its application for the TIA.[3]

As explained above, the contract provision that defined "substantial completion"

and set forth the requirements for receiving the TIA made reference only to a certificate of occupancy. A certificate of occupancy, as referred to in the contract, does not require total completion of construction; it requires only substantial completion. We decline to read into the language agreed upon by the parties an additional requirement of total completion of construction. *See, e.g., Guzorek,* 690 N.E.2d at 669–670 (holding trial court erred when it removed requirements provided by the contract). Moreover, Paragraph 33 provides a remedy for a party's failure to abide by legal requirements. It therefore does not serve as a basis for withholding the TIA until the tenant becomes compliant.

For the foregoing reasons, we reverse the trial court's entry of summary judgment for American National. We remand with instructions that the trial court enter summary judgment for Circuit City with respect to the date of substantial completion, and for further proceedings consistent with this opinion.

Reversed and remanded.

ROBB, J., and RILEY, J., concur.

---

3. American National did not offer any alternate theory of recovery in its complaint, motion for summary judgment, memorandum of law in support of motion for summary judgment, or appellee's brief. As a result, we do not address whether American National was injured by Circuit City's failure to comply with lawful requirements.