Jeffrey S. CAHOON, M.D. and Shari A. Kohne and Edward L. Kennedy, Co–Executors of the Estate of Robert W. Kohne, M.D., Appellants–Defendants–Cross–Appellees,

v.

Glessie Joann CUMMINGS, Appellee–Plaintiff–Cross–Appellant.

No. 79A05–9801–CV–026.

Court of Appeals of Indiana.

June 30, 1999.

Rehearing Denied Aug. 24, 1999.

2) whether the trial court erroneously instructed the jury that Wife could recover under a "pure loss of chance" theory in a survival action;

3) whether the trial court erred in not requiring Wife to elect between a wrongful death claim and a survival action prior to trial;

4) whether the trial court erroneously admitted evidence that Kohne made additions to Cummings's medical records and whether the trial court appropriately instructed the jury on this evidence; and

5) whether the trial court erroneously awarded prejudgment interest with respect to the judgment against Dr. Cahoon.

In addition, Wife raises one issue on cross-appeal which we restate as whether the trial court erred in denying her motion for prejudgment interest with respect to Dr. Kohne. We reverse and remand for a new trial.

Kevin C. Schiferl, Julia Blackwell Gelinas, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorneys For Appellants Shari A. Kohne and Edward L. Kennedy, Co-Executors of the Estate of Robert W. Kohne, M.D.

Steven J. Cohen, Kathryn A. Elias, Zeigler Carter Cohen & Koch, Indianapolis, Indiana, for Appellant Jeffrey S. Cahoon, M.D.

Terry Kaiser Park, Caplin Pehler Park & Tousley, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Jeffrey S. Cahoon, M.D. and the co-executors of the estate of Robert W. Kohne, M.D. ("Kohne") (collectively "Appellants") appeal the judgment in favor of Glessie Joan Cummings ("Wife") in her action for the wrongful death of her husband, William T. Cummings.[1] Appellants raise several issues for our review, which we consolidate and restate as:

1) whether the trial court's wrongful death instruction was erroneous;

The facts most favorable to the judgment follow. In 1991, William Cummings sought treatment for heartburn from Dr. Kohne, his family physician. Dr. Kohne ordered x-rays of his esophagus, stomach and small bowel. The x-rays were evaluated by Dr. Cahoon, a radiologist, who diagnosed Cummings with a hiatal hernia and reflux esophagitis. Dr. Cahoon also noted that there was an area of mucosal irregularity within the esophagus. After receiving Cahoon's report, Dr. Kohne failed to recommend an endoscopy and tissue biopsy. Dr. Kohne told Cummings that he had a hiatal hernia with reflux and suggested that Cummings lose weight, sleep sitting up, and avoid greasy foods. Dr. Kohne also told Cummings to return to his office after losing weight.

From December of 1991 to July of 1992, Cummings dieted in an attempt to lose weight. In July of 1992, Cummings returned to Dr. Kohne's office and Dr. Kohne ar-

---

**1.** Wife asserted three separate claims in her action including: wrongful death, which Wife pursued as Cummings's personal representative (*See* former Ind.Code § 34–1–1–2); a survival action, which Wife also pursued as Cummings's personal representative (*See* former I.C. § 34–1–1–1); and a loss of consortium claim which she pur-

sued on her own behalf (*See Warrick Hospital, Inc. v. Wallace*, 435 N.E.2d 263, 269, (Ind.Ct. App.1982), *overruled on other grounds* ). Our references to Wife in our discussion of the wrongful death and survival actions will be to Wife in her respective capacity.

ranged for Cummings to acquire his x-rays and obtain further consultation at the V.A. Hospital in Danville, Illinois. However, before Cummings reported to the hospital, his esophagus perforated and hemorrhaged. An emergency endoscopy revealed a large malignancy in the esophagus and Cummings was subsequently diagnosed with esophageal cancer.

In March of 1993, Cummings filed a complaint with the Department of Insurance against Dr. Cahoon, which Wife later amended adding Dr. Kohne. The Medical Review Panel concluded that both doctors had failed to comply with the appropriate standard of care but that such conduct was not a factor in the resultant damages.

Cummings died on August 15, 1993. In February of 1995, Wife filed a complaint against Appellants asserting a claim for damages resulting from their failure to diagnose Cummings's cancer. In her complaint, Wife alleged that, as a result of the negligence of the Appellants, Cummings had incurred medical expenses, lost income, lost a substantial chance of survival, and died. In addition, she alleged that she had lost the services and consortium of her husband since the date of the negligence, would suffer future loss of services and consortium, and had incurred her own medical expenses and lost income.

In March of 1996, Dr. Kohne died and his estate was substituted as a party defendant. A few days prior to trial, both Cahoon and Kohne amended their answers admitting that they breached the duty of care in their treatment of Cummings, but continued to deny that their conduct was the proximate cause of the alleged damages. A jury trial was conducted in September and October of 1997. The jury returned a verdict against Dr. Kohne in the amount of $194,000 and against Dr. Cahoon in the amount of $75,000.

Thereafter, Wife filed a motion for prejudgment interest. The trial court denied the motion for prejudgment interest with respect to Dr. Kohne and awarded $18,443.84 in prejudgment interest with respect to Dr. Cahoon.

## I.

We first address Appellants' argument that the trial court's wrongful death instruction was a misstatement of Indiana law. The Appellants challenge this instruction on several bases. They assert that the instruction misstates the standard for proximate cause required to support a wrongful death action, that there is insufficient evidence to support the instruction, and that it erroneously permits the jury to award full wrongful death damages. We will address each of these contentions in turn.

 The substance of a jury instruction must be supported by the evidence and must be a correct statement of the law. *Hardsaw v. Courtney*, 665 N.E.2d 603, 608 (Ind.1996), *reh'g denied.* We will assume that an erroneous instruction influenced the verdict and will reverse for such error unless it appears from the evidence that the verdict could not have differed even with a proper instruction. *Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind. 1992). The wrongful death instruction given by the trial court follows:

"In this case you must first determine if the Defendant's negligence increased the risk of harm to Ted Cummings, and whether the increased risk was a substantial factor in his death on August 15, 1993. If you so find, the Plaintiff is entitled to recover full wrongful death damages. In computing wrongful death damages, you may consider: 1) the value of Mr. Cummings lost earnings; 2) the value of his services; 3) the value of love and affection; and 4) medical, funeral and burial expenses related to his death."

Record, pp. 2266–2267.

 Appellants first contend that this instruction erroneously states the requirement for proximate cause because it imposes liability if the jury finds only that the wrongful act increased the risk of harm and that such increased risk was a substantial factor in Cummings's death. Rather, Appellants assert that the language of the wrongful death act requires that the jury find that the wrongful act of the Appellants was more likely than not the cause of Cummings's death. The version of the wrongful death statute applicable to this case is found at

Ind.Code § 34–1–1–2[2] and provides, in relevant part:

"When the death of one *is caused* by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. . . ."

(emphasis added). Appellants maintain that the statute, by its plain language, requires traditional proximate cause to be proved before liability may be imposed upon a defendant. We disagree.

This appeal raises the question of whether a plaintiff in a medical malpractice action can recover damages for death where it cannot be proved that the negligence of the doctor was the cause of death as opposed to the underlying disease or injury. This particular circumstance has been described as follows:

"Where a patient's illness or injury already results in a probability of dying greater than 50 percent, an obvious problem appears. No matter how negligent the doctor's performance, it can never be the proximate cause of the patient's death. Since the evidence establishes that it is more likely than not that the medical problem will kill the patient, the disease or injury would always be the cause-in-fact. The plaintiff must ordinarily prove that proper diagnosis and treatment would have prevented the patient's injury or death."

*Mayhue v. Sparkman,* 653 N.E.2d 1384, 1387 (Ind.1995). There are obvious policy reasons for allowing recovery in these cases. One significant justification is that it would be untenable to

"bar any recovery in tort on behalf of the survivors of many potentially terminal patients, no matter how blatant the health care provider's negligence. Through negligence, a physician or other health care provider could reduce a patient's chances of survival from as high as fifty percent to, for example, ten percent, and yet remain unanswerable in the law of tort."

*Perez v. Las Vegas Medical Center,* 107 Nev. 1, 805 P.2d 589, 591 (1991).

The desire to provide a patient a means of recovery in these situations has prompted the evolution of two general approaches. One approach is generally referred to as the "loss of chance" doctrine where a plaintiff is allowed to recover not for the death itself, but for the value of the decreased chance of survival or recovery caused by the malpractice. *See Perez,* 107 Nev. 1, 805 P.2d 589, 592; *DeBurkarte v. Louvar,* 393 N.W.2d 131, 137 (Iowa 1986). Another approach allows a plaintiff to recover for death by applying the causation standard found in § 323 of the Restatement of Torts (Second). *See Thompson v. Sun City Community Hospital, Inc.,* 141 Ariz. 597, 688 P.2d 605, 616 (1984); *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920, 925 (1981). Section 323 provides in pertinent part:

"One who undertakes, gratuitously or for consideration, to render services which he should recognize as necessary for the protection of the other's person . . . , is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm. . . ."

Thus, a plaintiff may recover for a harm (i.e.death) where it can be proved that the negligent act of the defendant (i.e.doctor) increased the risk of that harm to the patient. However, we emphasize here that § 323 only has application in situations where the defendant has undertaken to provide "services which he should recognize as necessary for the protection of the other's person. . . ." Restatement of Torts (Second) § 323.

As between the loss of chance theory of recovery and the § 323 approach, the Indiana Supreme Court adopted § 323 for Indiana in *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1389 (Ind.1995). *Mayhue* involved a medical malpractice suit in which the plaintiff-husband claimed loss of consortium resulting from the death of his wife. The defendant-doctor had filed a motion for sum-

---

**2.** The current version of this statute is found under I.C. § 34–23–1–1.

mary judgment asserting that any negligence on the part of the doctor was not the proximate cause of death because the decedent's chance of survival notwithstanding the negligence was less that 50 percent. The trial court denied the motion for summary judgment and the court of appeals affirmed adopting a loss of chance theory of recovery. *Mayhue v. Sparkman*, 627 N.E.2d 1354, 1359 (Ind.Ct.App.1994), *vacated* 653 N.E.2d 1384 (Ind.1995). In vacating the court of appeals decision, the supreme court rejected the loss of chance doctrine and adopted the § 323 approach as "most consistent with Indiana law." *Mayhue*, 653 N.E.2d at 1389. Thus, in medical malpractice actions where a negligent health care provider claims that the recovery of damages is not warranted because the patient would have suffered injury or death anyway, a plaintiff may still be successful if it can be demonstrated that the defendant was negligent, the negligent act increased the risk of harm, and that the increased risk was a substantial factor in causing the harm suffered by the plaintiff. *Id.* at 1388.

Despite the supreme court's holding in *Mayhue*, Appellants contend that *Mayhue* was not a wrongful death action and, therefore, is inapplicable to this case. Furthermore, they contend that because the legislature did not expressly incorporate § 323, the supreme court cannot engraft this relaxed proximate cause standard onto the statute. They maintain that the phrase "the death of one *is caused* by the wrongful act or omission of another" in the statute requires the application of traditional proximate cause and proof that the negligent act more likely than not caused the death. I.C. § 34–1–1–2. We decline to interpret the statute so narrowly.

▉ The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier,* 702 N.E.2d 351, 354 (Ind.1998). The statute is examined as a whole, and while the language itself is analyzed, this Court refrains from overemphasizing a strict literal

or selective reading of individual words. *Id.* We believe the intent of the wrongful death statute was to allow an action to be brought by the decedent's personal representative against a defendant who may be held legally liable for the death, regardless of the mechanism of liability. For example, just as the mechanism for determining liability in a products liability action is determined by statute, the mechanism for determining liability in a medical malpractice action is governed by case law.[3] *See* I.C. § 34–20–2–1 (containing the rule of strict liability in products liability actions); *Watson v. Medical Emergency Services*, 532 N.E.2d 1191, 1193 (Ind.Ct.App.1989) (setting out the elements that must be proved in a medical malpractice case), *reh'g denied, trans. denied.* In *Mayhue*, the supreme court adopted the § 323 standard as the standard for liability for medical malpractice cases where a doctor has increased the risk of harm to a patient who has a chance of survival less than 50 percent. Therefore, we hold that a medical malpractice action based upon the § 323 standard may be brought under the wrongful death statute where the harm is death and where the defendant has increased the risk of death.

As we have concluded that such an action may be brought, we must next determine whether the trial court's wrongful death instruction correctly reflected the § 323 standard. As we noted above, a plaintiff must show that the defendant, who has undertaken to provide services to the plaintiff, 1) was negligent, 2) that the negligent act increased the risk of harm, and 3) that the increased risk was a substantial factor in causing the harm. *Mayhue*, 653 N.E.2d at 1388. The trial court's instruction required the jury to determine "if the Defendant's negligence *increased the risk of harm* to Ted Cummings, and whether the increased risk was a *substantial factor in his death* on August 15, 1993." Record, p. 2266 (emphasis added). We conclude that this instruction mirrors the required standard as set out in *Mayhue* and, therefore, is a correct statement of the law.

**3.** To interpret the language of the wrongful death statute as literally as suggested by the Appellants would mean that a party would be precluded from bringing a product liability action under the

wrongful death act as no "wrongful" act is required to impose liability in a product liability action. *See* I.C. § 34–20–2–1.

■ The Appellants also assert that there was insufficient evidence to support a wrongful death instruction because Cummings could not show that the negligence more likely than not caused Cummings's death. However, we have already determined that such evidence is not required to support a wrongful death action under the facts of this case. Wife presented evidence that Cummings's chance of survival was approximately 25–30 percent at the time that a diagnosis should have been made by the defendants and that the delay in diagnosis decreased Cummings's short term survival and increased the risk of metastasis. We conclude that this evidence is sufficient to support the wrongful death instruction under a § 323 standard for causation.

■ The final contention raised with respect to the wrongful death instruction involves the instruction that the jury may award full wrongful death damages. Appellants correctly point out that *Mayhue*, while adopting the § 323 standard, did not address how damages would be measured in such a case. Appellants assert that because *Mayhue* adopted the reasoning of other courts that allow for an adjustment of damages to an amount less than full damages, Wife should not be allowed to recover full damages resulting from Cummings's death. *See McKellips v. Saint Francis Hospital, Inc.*, 741 P.2d 467, 476–477 (Okla.1987).[4] They further contend that because traditional proximate cause is not required to impose liability, it is unfair to allow a plaintiff to recover full wrongful death damages. They suggest that because the injury is effectively

a reduction in the chance of survival, the amount of damages available should be adjusted proportionally.

We do not agree that the fact that the supreme court did not describe a method for calculation of damages means that the supreme court intended to adopt a calculation method such as the one set out in *McKellips*. We think it more likely that the supreme court intended to allow for full recovery. First, the proportional damage scheme set out in *McKellips* is complicated and would require extensive further discussion by our supreme court had they intended to adopt such a scheme. Second, the basic difference between the loss of chance doctrine and the § 323 approach is that with the first, the recoverable injury is the lost chance of survival; with § 323, the recoverable injury is death. In recovering for a lost chance of survival, it is logical to allow a proportional recovery for the percent chance actually lost by the patient. Such a recovery is directly related to the injury sustained. However, under § 323, the compensable injury is death. The language of § 323 plainly states that one is "liable for the harm" rather than that portion of the risk which was increased. See *Thompson*, 688 P.2d at 615 (stating that "[t]he defendant is not, under Section 323 . . . liable merely for having increased the risk of death, but the evidence of the increased risk of death is . . . for the jury's consideration on the factual issue whether the death was caused by defendant's failure to use reasonable care.").

Finally, while Appellants believe it unfair to impose full wrongful death damages ab-

4. *McKellips* set out a procedure for calculation damages explained as follows:

"The amount of damages recoverable is equal to the percent of chance lost multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action. After consideration of the statistical evidence of the original and diminished chance of survival presented by both sides as well as other factors which are peculiar to the individual decedent, the jury should select from the figures presented or choose appropriate figures to find the percentage of original chance of survival in absence of negligence and the percentage of diminished chance resulting from the defendant's negligence in order to determine the net reduced figure. The percentages and net re-

duced figure should be found and added by the jury through a general verdict. The trial court should then multiply the total amount of damages by the net reduced figure to determine the final damage award.

To *illustrate* the *method* in a case where the jury determines from the statistical findings combined with the specific facts relevant to the patient the patient originally had a 40% chance of cure and the physician's negligence reduced the chance of cure to 25%, (40%—25%) 15% represents the patient's loss of survival. If the total amount of damages proved by the evidence is $500,000, the damages caused by defendant is 15% × $500,000 or $75,000."

*McKellips*, 741 P.2d at 476–477 (citations and footnotes omitted).

sent proof that the patient would most likely have survived absent the negligence, we prefer to view such a recovery as a means of protecting patients facing treatment for a potentially terminal illness. As we stated in our decision in *Mayhue:*

"Certainly, tort law is as much about influencing conduct by civil sanctions as it is about compensating injured persons.... We cannot condone the notion that reasonable medical care is only due those who have a probability of recovery and denied those who have only a substantial chance of recovery."

*Mayhue,* 627 N.E.2d at 1360. To allow full recovery of damages encourages doctors treating patients with ten percent chance of survival to use the same level of care as when treating patients with a thirty percent chance of survival.

Furthermore, the application of § 323, as specified by *Mayhue,* has a built-in protection for what may be an otherwise unfair recovery. Even after the plaintiff proves that there was a negligent act and that the negligence increased the risk of death, the plaintiff must still prove and the jury must find by a preponderance of the evidence that the increased risk of death was a substantial factor in the death. This would protect doctors against awards where the negligence played an insignificant role in the patient's death. Although what constitutes a substantial factor may seem elusive, as noted by the supreme court in *Mayhue,* we have "strong faith in the ability of the jury to decide such complex questions." *Mayhue,* 653 N.E.2d at 1389.

In sum, we hold that § 323 as adopted by the supreme court in *Mayhue* applies to medical malpractice actions where the injury is death and the action is brought via the wrongful death statute. As a result, we conclude that the wrongful death instruction given by the trial court in this case was a correct statement of the law with respect to both the standard of proximate cause and the damages that may be awarded. We further conclude that the giving of this instruction was supported by the evidence presented at trial.

## II.

The next issue raised by Appellants is whether the trial court erroneously instructed the jury that Wife could recover under a pure loss of chance theory in a survival action. Following the wrongful death instruction discussed above, the trial court instructed the jury. in relevant part, as follows:

"If you determine that the Defendant's negligence was not a substantial factor in Mr. Cummings's death, but the Defendant's negligence increased the risk of harm to Mr. Cummings by reducing his opportunity for a better result, and that increased risk was a substantial factor in that harm, then you should award damages as will fairly compensate the Plaintiff for the harm sustained. Harm may be the loss of opportunity for cure, decreased short-term survival, unnecessary physical pain and mental suffering. Mrs. Cummings is also entitled to be compensated for her loss of consortium...."

Record, pp. 2266–2267. Appellants assert that the portion of this instruction that defines the recoverable harm as "the loss of opportunity for cure" and "decreased short term survival" is, in effect, a loss of chance instruction and contrary to Indiana law. We agree.

We first note that this instruction again correctly states the § 323 standard of proximate causation. However, this instruction erroneously defines the "harm" as the loss of a chance of survival. This instruction effectively combines the loss of chance doctrine and the § 323 standard. However, these options are alternative and incompatible approaches for imposing liability in cases such as this. The supreme court in *Mayhue* clearly adopted the § 323 approach in this class of cases while rejecting the loss of chance doctrine. *See Mayhue* 653 N.E.2d at 1389. As such, the loss of a chance of survival, whether stated as a "loss of opportunity for cure" or "decreased short term survival" is not recoverable in Indiana under *Mayhue.* Therefore, we conclude that this particular portion of the instruction misstated the law with respect to the type of harm for which recovery may be had.

However, the remaining portion of the instruction that permits the jury to award damages for pain and mental suffering and loss of consortium is not erroneous. First, damages for any pain and mental suffering incurred by Cummings during his life as a result of the negligent misdiagnosis are injuries that he could have pursued before his death. *See Marks v. Gaskill,* 546 N.E.2d 1245, 1249 (Ind.Ct.App.1989) (noting the rule that juries may consider pain and suffering and mental anguish), *aff'd* 563 N.E.2d 1284; *see also Crawford v. Wells,* 168 Ind.App. 615, 618, 344 N.E.2d 869, 871 (1976); *Chicago & Calumet Dist. Transit Co. v. Stravatzakes,* 129 Ind.App. 337, 354, 156 N.E.2d 902, 910 (1959). Therefore, such damages may be sought by Wife as his personal representative through operation of the statute providing for survival of actions after death, I.C. § 34–1–1–1.[5]

In addition, Wife may recover, in her own capacity, for loss of consortium resulting from the negligence of the defendant doctors in an action independent from the wrongful death claim. *Warrick Hospital, Inc. v. Wallace,* 435 N.E.2d 263, 269, (Ind.Ct.App.1982) (holding that widow had individual action for loss of her husband's consortium between onset of his illness and death separate from that available under wrongful death statute), *overruled on other grounds, Community Hospital v. McKnight,* 493 N.E.2d 775, 777 (Ind.1986), *reh'g denied; see also Dearing v. Perry,* 499 N.E.2d 268, 272 (Ind.Ct.App.1986) (holding that a loss of consortium is separate and independent from the primary action). However, this loss of consortium claim is derived from Cummings's claim for pain and suffering. *See Kolkman v. Falstaff Brewing Corp.,* 511 N.E.2d 478, 480 (Ind.Ct.App.1987) (holding that absent an actionable injury to one spouse, the other spouse cannot recover for loss of consortium), *reh'g denied, trans. denied.*

Therefore, we conclude that, as to recovery for pain and mental suffering and loss of consortium, the instruction is a cor-

rect statement of the law. However, in light of the erroneous instruction on the loss of chance recovery, we cannot conclude that the verdict would have been the same absent the giving of this instruction. Therefore, we reverse and remand this case for a new trial. *See Vergara,* 593 N.E.2d at 187.

### III.

Although we have determined that the erroneous instruction allowing recovery in a survival action for loss of chance necessitates a remand for a new trial, there are several remaining issues that may recur in a subsequent trial. The first of these issues is whether the trial court erroneously permitted Wife to pursue simultaneously both a wrongful death action under I.C. § 34–1–1–2 and a survival action pursuant to I.C. § 34–1–1–1.[6] Appellants assert that these theories are inconsistent and mutually exclusive and, therefore, Wife was required to elect which action she wished to pursue prior to trial. Appellants base their argument on the doctrine of election of remedies.

The election of remedies doctrine is an equitable principle that bars a party from seeking recovery under one theory where he has already elected to prosecute the action to a conclusion under another inconsistent theory. *Farmers State Bank of Wyatt v. Clark Equipment Co.,* 582 N.E.2d 452, 454 (Ind.Ct. App.1991). In other words, "where a party has two coexisting but inconsistent remedies and elects to prosecute one such remedy to a conclusion, he may not thereafter sue on the other remedy." *Id.*

The application of this doctrine turns primarily upon the determination of whether the two theories or remedies in question are "inconsistent." For the purposes of the doctrine, this term has been defined as follows:

"The test of such inconsistency of remedies has its basis in the factual background which constitutes the cause of action. If the assertion of one cause of action involves the repudiation of another, then the modes of redress are inconsistent. If the

---

5. The current version of this statute is found under I.C. § 34–9–3–4.

6. The current versions of these statutes are now found under I.C. § 34–23–1–1 (wrongful death) and I.C. § 34–9–3–4 (survival action).

one cause of action admits a statement of facts, and the other denies the same facts, the remedies sought by such actions are inconsistent. It follows therefore that where the remedies are not inconsistent, the party may prosecute both actions to a judgment, although only one satisfaction can be had."

*Kimmel v. Captain,* 107 Ind.App. 621, 626, 24 N.E.2d 435, 437 (1940).

Appellants assert that the wrongful death statute and the survival action statute provide for inconsistent actions and, therefore, may not be pursued together. The statute governing survival of actions provides, in relevant part, as follows:

"(a) All causes of action survive, and may be brought, notwithstanding the death of the individual who is entitled or liable in such an action, by or against the representative of the deceased party except actions for libel, slander, malicious prosecution, false imprisonment, invasion of privacy, and personal injuries to the deceased party, which shall survive only to the extent provided herein. An action under this section may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such an action is considered as a continued action, and accrues to the representatives or successors at the time it would have accrued to the deceased if the deceased had survived.

\* \* \* \* \*

(d) If a person receives personal injuries caused by the wrongful act or omission of another *and subsequently dies from causes other than those personal injuries,* the personal representative of the decedent who was injured may maintain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived. These damages inure to the exclusive benefit of the decedent's estate."

I.C. § 34–1–1–1 (emphasis added). The wrongful death statute provides, in relevant part, as follows:

"*When the death of one is caused by the wrongful act or omission of another,* the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission . . . ."

I.C. § 34–1–1–2 (emphasis added).

We agree with Appellants that the actions authorized by these two statutes are inconsistent as one requires proof that the wrongful act sued upon caused the death of the plaintiff and the other requires proof that the plaintiff died from causes other than the wrongful act. Thus, it initially appears that the doctrine of election of remedies is applicable to the case before us.

However, the traditional application of the doctrine bars *subsequent* prosecution of an inconsistent action where a plaintiff has elected one remedy and prosecuted it to a conclusion. *See Parke v. First Nat. Bank of Elkhart,* 571 N.E.2d 1317, 1319 (Ind.Ct.App. 1991) ("The doctrine of election of remedies applies *only* where a party has chosen one remedy and later pursues another remedy which is repugnant to or inconsistent with the remedy selected." (emphasis added)), *reh'g denied, trans. denied; see also Farmers State Bank,* 582 N.E.2d at 454 (stating that the doctrine of election of remedies "does not apply unless there are two or more coexistent remedies available to the litigant at the time of the election, from which a choice may be made, and one of which is chosen by the litigant." (quoting INDIANA LAW ENCYCLOPEDIA, *Election of Remedies* § 1, p. 344 (1958))). In essence, the doctrine operates as a form of estoppel or waiver once such an election is made. In fact, there are many cases that focus specifically on whether an election was in fact made by a litigant. *See e.g. Parke,* 571 N.E.2d at 1320 (holding that a party's intent to elect is controlling in determining if an election has been made and a party cannot be deemed to elect a remedy if the party was not aware of the additional cause of action). Here, we have the absence

of an election because Wife intentionally sought to pursue both actions. Therefore, Appellants assert not that Wife has made an election between the two theories of recovery barring her ability to pursue the other, but that she is *required* to make such an election. The application of the doctrine of election of remedies in this nontraditional context is one that requires further discussion.

Our research reveals little case law that addresses the specific question of whether an election is required prior to trial. We first turn to the cases cited by Appellants in support of their position that Wife was required to elect. The first case is *American International Adjustment Co. v. Galvin*, 86 F.3d 1455 (7th Cir.1996), *reh'g denied*. The Seventh Circuit's holding in this case, which involved a legal malpractice action, is not directly relevant to the facts before us. However, Appellants point out that *Galvin* stated the rule that an estate cannot recover damages under both the wrongful death statute and the survival statute. We do not disagree with this statement. As we stated above, a plaintiff cannot recover under both statutes as they provide for inconsistent actions. However, *Galvin* does not specifically address whether a party may pursue actions under both statutes at trial and allow the jury to determine which action is viable. In *Galvin*, the cause of the decedent's death was not in dispute, unlike the case before us. More importantly, the Seventh Circuit recognized that it may be up to the jury to decide whether there is a wrongful death action or a survival action "assuming [there was] available evidence for each of the two possibilities. . . ." *Id.* at 1461. We find that this language supports Wife's position that given the difficulty of proving proximate cause in this case, she should be allowed to pursue both actions and allow the jury, as fact finder, to determine which cause of action the evidence ultimately supports. We find additional support of this position in other states. For example, the Court of Appeals of South

Carolina has held that "[w]here a plaintiff presents two causes of action because he is uncertain of which he will be able to prove, but seeks a single recovery, he will not be required to elect." *Adams v. Grant*, 292 S.C. 581, 358 S.E.2d 142, 144 (1986).

Appellants also cite the district court decision of *Kohn v. Norfolk & Western Railway Co.*, 966 F.Supp. 789 (N.D.Ind.1997) in support of their position. In *Kohn*, the plaintiff set forth in the complaint counts under both the Indiana survival statute and the wrongful death statute. The district court held that the survival action for personal injuries was foreclosed. *Id.* at 792. However, as in *Galvin*, the basis of the court's decision was that there was no dispute that the wrongful act of the defendant was the cause of the decedent's death. Under those circumstances, it was appropriate for the district court to dismiss the plaintiff's claim under the survival statute because there was no evidence to support it.

Appellants also cite *Osborne v. Wenger*, 572 N.E.2d 1343 (Ind.Ct.App.1991). *Osborne*, however, merely held that pursuant to former I.C. § 34–4–30–2 a plaintiff may not recover both treble and punitive damages. *Id.* at 1346. In other words, a plaintiff under the statute is specifically required to elect the measure of damages to prevent double recovery. As *Osborne*'s holding was limited to a direct application of a statutory provision regarding recoverable damages, we do not find it instructive here.[7]

In resolving the issue before us, we find the Seventh Circuit's analysis in *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir.1990), *reh'g denied*, to be the most cogent. In *Olympia*, the court addressed the doctrine of election of remedies as having both a procedural and a substantive component.

"The procedural aspect derives from the overriding goal of common law pleading, which was by successive rounds of plead-

---

7. Appellants also cite *Vera Cruz v. Chesapeake & Ohio Railway Co.*, 192 F.Supp. 958 (N.D.Ind. 1961) and refer to the district court's statement that actions under the wrongful death statute and a statute allowing recovery for loss of services of a child are not "optionally alternative remedies [or] actions that can be pursued together." *Id.* at 958. Although this conclusion does generally support their position, Appellants do not explain, nor do we understand, how this case instructs us in our resolution of the particular issue before us.

ing to narrow the issues until there was just one for trial. It was essential to the attainment of this goal that a party be forbidden to plead in the alternative, for that would generate two or more issues for trial."

*Id.* (citations omitted). This practice, referred to as "theory pleading," requires a party to adopt a specific legal theory of recovery which is adhered to throughout the case. *Palacios v. Kline,* 566 N.E.2d 573, 576 (Ind.Ct.App.1991). However, the adoption of Indiana Trial Rule 8(A) changed the pleading practice in Indiana from theory pleading to notice pleading. Notice pleading merely requires a party to plead the operative facts so as to place the defendant on notice as to the evidence to be presented at trial. *Palacios,* 566 N.E.2d at 576; *see also Binninger v. Hendricks County Bd. of Zoning Com'rs,* 668 N.E.2d 269, 272 (Ind.Ct.App.1996) ("Under Indiana's 'notice' pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case."), *trans. denied.* Furthermore, Trial Rule 8(E) allows a party to set forth not only alternative theories but inconsistent theories of recovery, providing as follows:

"(E) All pleadings to be concise and direct—Consistency.

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required. All fictions in pleading are abolished.

(2) A pleading may set forth two [2] or more statements of a claim or defense *alternatively or hypothetically,* either in one [1] count or defense or in separate counts or defenses. When two [2] or more statements are made in the alternative and one [1] of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A pleading may also state as many separate claims or defenses as the pleader has *regardless of consistency* and whether based on legal or equitable grounds. All statements shall be made subject to the obligations set forth in Rule 11."

(emphasis added). This court has commented on the significance of this rule as follows:

"Trial Rule 8(A) changed the traditional pleading practice in Indiana from 'theory pleading' to 'notice pleading.' Theory pleading requires pleading to adopt a specific legal theory of recovery which is adhered to throughout the case. However, notice pleading merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial.

\* \* \* \* \*

Nor does TR 15(A) [Amended and supplemental pleadings] restrict pleading of inconsistent theories. Pursuant to TR 15(A), a trial court can amend pleadings before or during trial regardless of whether a change in the cause of action might result. There is no limitation on the court's discretion in permitting amendments merely because the cause of action or the theory of the complaint is changed."

*Palacios,* 566 N.E.2d at 576 (citations omitted). As the current rules of pleading in Indiana have abolished the requirement of election of inconsistent remedies at the pleading stage, we conclude that Wife was authorized to plead both theories of recovery. *See* T.R. 8(E)(2).

We are still left with the question of whether at some point after pleading, but before trial, a party is procedurally required to elect between inconsistent remedies. Although our research reveals no case directly on point in Indiana, we find a few cases that require discussion and distinction. The first of these cases is *Sickels v. Aetna Securities Co.,* 220 Ind. 347, 41 N.E.2d 947 (1942). In *Sickels,* the plaintiffs initially sought rescission of a real estate purchase agreement and return of the purchase price. At trial, they attempted to amend their pleading to include a claim for damages resulting from fraud in the inducement of the contract. In affirming the trial court's requirement that the plaintiff elect between the two theories, our supreme court stated:

"When a contract has been induced by fraud, the injured party may pursue one of

two remedies. He may affirm the contract and sue for damages occasioned by the fraud or he may disaffirm the contract and sue to recover the compensation paid. He cannot maintain both of these actions simultaneously in the same paragraph of complaint. *Under our code it is necessary for a pleader to adopt and conform to some definite theory.* If doubt exists as to what the theory is, the court will determine it from the general scope and tenor of the pleading. These rules are too well known to justify the citation of authorities. In the case at bar the appellants sought to maintain both of these conflicting theories in the same paragraph of their amended complaint. By forced election they chose to proceed upon the theory of a rescission of the contracts. Their subsequent attempt to amend their election was a second effort to assert inconsistent theories. No reversible error was committed in requiring the appellants to make their election or in holding them to their choice."

*Id.* at 351, 41 N.E.2d at 948 (emphasis added). Although *Sickels* holds that a plaintiff may be forced to elect, the decision was based upon the procedural requirement that a plaintiff adopt a definite theory under the previous practice of theory pleading. As we noted earlier, this method of pleading has been replaced by T.R. 8, which allows a party to plead inconsistent theories. As such, we conclude that *Sickels* is not applicable to the case before us.

Our research also reveals a case decided by this court specifically stating that "when the remedies available to a prospective litigant are inconsistent or mutually exclusive ... the election of one remedy will operate as a bar to the *concurrent* or subsequent pursuit of other remedies." *City of Hammond v. Beiriger,* 164 Ind.App. 275, 280, 328 N.E.2d 466, 469 (1975) (emphasis added). While this case would appear to require a party to elect prior to trial, the court in *Beiriger* did not find it necessary to apply the rule because it concluded that the two remedies pursued in that case were not inconsistent. *Id.; see also Citizens Bank & Trust Co. of Washington v. Gibson,* 463 N.E.2d 276, 282 (Ind.Ct.App.1984) (citing the rule from *Beiriger* but finding no need to

apply it because, as in *Beiriger,* the remedies were found to be consistent), *aff'd in part, rev'd in part,* 490 N.E.2d 728 (Ind.1986). We do not find *Beiriger* instructive for two reasons. First, the argument in *Beiriger* was that a party had, in fact, made a binding election by instituting a prior proceeding, unlike the case here. Second, the court in *Beiriger* cites no prior authority and we are unable to trace any development of the rule adopted. Without the benefit of analogous facts or an opportunity to see how the *Beiriger* court would have applied the rule here, we find this case to be neither applicable nor instructive to the facts before us.

In our final consideration of the procedural aspect of the doctrine of election of remedies, we focus on the underlying purpose of the doctrine. Our supreme court has stated that its purpose is "to prevent excessive and repetitive litigation." *Hoover v. Hearth & Home Design Center, Inc.,* 654 N.E.2d 744, 745 (Ind.1995). Additionally, the Seventh Circuit in *Olympia* noted that the point of the doctrine is "not that an election is required but that once made it may be final either by operation of *res judicata* or because a change of ground would create unreasonable surprise or unduly complicate or delay the litigation." *Olympia,* 908 F.2d at 1371. Although Appellants assert that they were prejudiced by having to defend against inconsistent positions on causation in this case, the prejudice would be greater to Wife if she was required to choose between theories of recovery. To illustrate this point, we once again turn to the Seventh Circuit's decision in *Olympia:*

"It would be unreasonable to make [plaintiff] choose between two forms of damages before trial and verdict. Suppose [plaintiff's] contract damages were $10,000 and its fraud damages $20,000. The jury might find that [plaintiff] had a good claim for breach but not fraud, and in that event [plaintiff] would be entitled to $10,000. If [plaintiff] had been forced to elect before trial, and had elected to drop the contract count, [plaintiff] would get nothing. Alternatively the jury might find that [plaintiff] had a good claim for fraud but not breach of contract, and then [plaintiff] would be

entitled to $20,000. If it had elected its contract remedy and dropped the fraud remedy, [plaintiff] would again get nothing. Both results are unsound and they are prevented by confining the doctrine of election of remedies to the limited office of preventing duplicative damages awards, and thus of placing a ceiling of $20,000 on [plaintiff's] damages in our hypothetical case."

*Olympia,* 908 F.2d at 1371–1372. We conclude that allowing the simultaneous pursuit of two inconsistent remedies or actions is not repugnant to the purposes underlying the doctrine of election of remedies. It does not necessarily produce excessive and repetitive litigation. *See Hoover,* 654 N.E.2d at 745. Furthermore, to require a plaintiff to elect prior to trial could, in some cases, operate as a bar to a legitimate recovery for an injury. *See Olympia,* 908 F.2d at 1371–1372.

Having considered the available case law, the authority cited by the parties, the changes in pleading practices, and the purposes underlying the doctrine of election of remedies, we conclude that there is no procedural bar to pursuing inconsistent theories or remedies at trial. As such, we next address whether an election is required under the substantive law of remedies. In addressing this aspect of the doctrine of election of remedies under the federal rules civil procedure, the Seventh Circuit in *Olympia* stated:

"In its substantive aspect ... the doctrine of election of remedies is not affected by the federal rules of civil procedure. In that aspect the doctrine is a part of the law of remedies rather than of procedural law. It seeks to prevent double recovery.

\* \* \* \* \*

That is all there is to the doctrine of election of remedies, viewed as a doctrine of the law of remedies rather than a pleading doctrine."

*Olympia,* 908 F.2d at 1371 (citations omitted). We agree that with no procedural bar

to the pursuit of inconsistent remedies at trial, the only remaining prohibition left to be applied is that which prevents a plaintiff from receiving more than one recovery for the same injury. Such double recovery was prevented in this case by the trial court's instructions to the jury. Here, the trial court specified that Wife may recover via the survival action only if the jury were to find that Wife was not entitled to recover in the wrongful death action.

▮ In conclusion, we hold that where a party has two or more inconsistent theories each supported by evidence or where a critical fact is legitimately in dispute, the trial court is not required to force the party to elect between them prior to trial.[8] However, there must be some means of preventing the party proceeding under alternative theories from obtaining a double recovery for the injury.

## IV.

The next issue we must address is whether the trial court erroneously allowed Wife to present evidence that Dr. Kohne made additional entries to Cummings's medical records after he had provided copies of the records to Cummings for the purposes of this litigation. In addition, we must address whether the trial court erroneously instructed the jury that it could presume that this alteration of the records "would have been unfavorable to Dr. Kohne on the issue of proximate cause." Record, p. 2269. Wife contended that Dr. Kohne altered his medical records in three ways:

"10. Defendant Robert W. Kohne, M.D. fraudulently and intentionally added the words 'Axid samples' to his 7/10/92 office notes on Ted Cummings after he sent copies of his records to Plaintiff in January, 1993.

11. Defendant Robert W. Kohne, M.D. fraudulently and intentionally added the words 'Cline scope' to his copy of the 12/3/91 endoscopy report to document his

---

**8.** We note that there are sufficient procedural mechanisms, in the form of motions for judgment on the pleadings, summary judgment, or judgment on the evidence to prevent a plaintiff from presenting an inconsistent action that has no evidentiary support. But where the evidence supporting both actions or theories is in dispute, as it was here, it is appropriate for the plaintiff to pursue both simultaneously.

alleged recommendation to Ted to have a 'scope' in January, 1992, after he sent copies of Ted's medical chart.

12. Defendant Robert W. Kohne negligently and carelessly added the name of a Physician's Insurance Company of Indiana adjuster, Gene Reiss, to Ted's medical chart at the same time he made the other alterations to Ted's chart."

Record, p. 1013. Wife contended that Kohne altered his medical records to conceal his negligence because he knew the delay in diagnosis and treatment caused harm to Cummings.

As conceded by Kohne, Indiana does recognize a spoliation rule which permits an adverse inference to be drawn against a party who destroys or suppresses evidence. "In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it." *Porter v. Irvin's Interstate Brick & Block Co., Inc.*, 691 N.E.2d 1363, 1364–1365 (Ind.Ct.App.1998). However, we find no authority in Indiana for the applicability of this rule to the particular facts before us. Here, there has been no destruction or suppression of evidence that would require a presumption to cure its unavailability. The additions made to Cummings's records did not in any way obscure or destroy the record. As such, the facts before us do not invoke the spoliation rule to the extent that it has been applied in Indiana. We conclude that the issue presented to us here is best resolved under the general evidence rules regarding relevance.

The rule that allows an unfavorable presumption with respect to destroyed or suppressed evidence logically stems from the unavailability of the evidence. In other words, because the trier of fact cannot know the substance of the evidence, there must be a presumption as to its substance. It also logically follows that the presumption will be adverse to the guilty party. However, where the evidence has not been destroyed and is otherwise available, as it is here, the presumption as to its contents is no longer necessary. The remaining presumption that naturally flows from Dr. Kohne's additions to the record is that he believed he had failed to provide Cummings with adequate care. If the issue of breach of duty were a remaining issue in this trial, the evidence and any related presumptions would be relevant and admissible. Such evidence would also be relevant to Dr. Kohne's credibility had he continued to maintain that he told Cummings to have an endoscopy. However, we disagree with the trial court's determination that the evidence was admissible to show that Kohne believed the case was weak or that it was specifically weak on the proximate cause issue.

First, a presumption as to the case generally is irrelevant as the only remaining element to be proved by Wife was proximate cause.[9] Second, despite the trial court's determination that "[a] reasonable inference [could be made] that Dr. Kohne was conscious that he increased the risk of harm to Mr. Cummings giving rise to the falsification of his testimony and records," the additions to the record are not relevant to the issue of proximate cause. Record, pp. 1154–1155. The fact that Dr. Kohne may have added an entry to the record that he had told Cummings to have and endoscopy does not yield an inference that Dr. Kohne believed that his failure to do so was the proximate cause of Cummings's death or other injury.[10]

---

9. Wife asserts that the alterations were also relevant to the issue of contributory negligence and points to an instruction given by the trial court on this issue. However, this instruction referred only to whether Cummings was contributorily negligent for failing to return to the doctor if he had continued problems, not whether Cummings failed to have an endoscopy at Kohne's instruction. Thus, we do not agree that the alteration of the record indicating that Kohne told Cummings to have an endoscopy is relevant to the issue of whether Cummings failed to seek follow-up care.

10. We agree with Kohne that the addition of the words "Axid samples" and the reference to a representative of his insurer was not relevant to the issues in this case. Wife refers only to the addition of "Cline scope" in her response to this issue and offers no explanation as to how the other additions are relevant. As the relevance of these two additions is not apparent to us, we

 The trial court stated in its order denying the motion in limine that "Dr. Kohne was a medical doctor with knowledge of the stages of cancer and the increased risks to the patient when cancer is not timely diagnosed and treated." Record, pp. 1154–1155. In effect, the trial court has made an expert witness of Dr. Kohne on the issue of proximate cause. "It is well settled that in a medical negligence claim, the plaintiff must prove by expert testimony not only that the defendant was negligent, but also that the defendant's negligence proximately caused the plaintiff's injury." *Schaffer v. Roberts*, 650 N.E.2d 341, 342 (Ind.Ct.App.1995). As Wife was required to prove causation through expert testimony, we think it was inappropriate for the trial court to allow the jury to presume proximate causation from a few words added to Cummings's medical records. Even presumptions that are allowed due to spoliation or destruction of evidence will not relieve a party of the burden of proving her case. *Porter*, 691 N.E.2d at 1365. The alteration of these records in no way prevented Wife from presenting evidence on the issue of proximate cause. Therefore, we conclude that it was erroneous for the trial court to allow evidence of these alterations to be admitted as they had no relevance to any issue at trial. Consequently, we conclude that the instruction permitting the jury to infer proximate cause from this evidence was also erroneous. As proximate cause was the sole issue at trial, this error, alone, necessitates reversal and remand for a new trial.

### V.

 The next issue we must address is whether the trial court erroneously awarded prejudgment interest with respect to the judgment against Dr. Cahoon. Cahoon asserts that the award was erroneous because Wife did not comply with the conditions set out in the statute governing award of prejudgment interest in civil actions arising out of tortious conduct. The relevant statutory provision in effect at the time of the award provided as follows:

> "This chapter [allowing prejudgment interest] does not apply if:
>
> (1) within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed;
>
> (2) the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted; or
>
> (3) the amount of the offer exceeds one and one-third (1 1/3) of the amount of the judgment awarded."

I.C. § 34–4–37–8.[11] Cahoon specifically asserts that while Wife made several offers of settlement to Cahoon and Kohne together, each of the offers failed to comply with the statutory requirement that the terms of the offer must provide for payment of the settlement within sixty days of acceptance of the offer. Our review of the record confirms this omission in each of the offers. As this statutory prerequisite was not met, we conclude that the trial court erroneously awarded Wife prejudgment interest with respect to Dr. Cahoon. *See Indiana Dept. of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind.Ct.App. 1992) (holding that we must give effect to the plain and ordinary meaning of a statute's language), *trans. denied.*

However, for the same reasons, we must affirm the trial court's denial of prejudgment interest with respect to the judgment against Dr. Kohne. Wife asserts on cross-appeal that the trial court's refusal to award prejudgment interest against Kohne was erroneous. The basis of her contention is that the trial court erroneously concluded that the Recovery Limitation Section of the Medical Malpractice Act[12] precluded prejudgment in-

---

conclude, without further discussion, that it was erroneous to admit evidence of these alterations at trial.

**11.** This section of the prejudgment interest statute has been recodified at I.C. § 34–51–4–6.

**12.** *See* former I.C. § 27–12–14–3. This section has since been revised and recodified as I.C. § 34–18–14–3.

terest in this case because it limits a health care provider's malpractice liability to $100,-000. However, because we have concluded that Wife is precluded from receiving pre-judgment interest for failure to comply with the statutory preconditions to such an award, we need not decide the issue she raises.

In conclusion, we hold that while the trial court's wrongful death instruction was a correct statement of the law, the error in the survival action instruction and the erroneous admission and instruction regarding evidence of the alteration of Cummings's medical record requires reversal and remand for a new trial.

Reversed and remanded.

HOFFMAN, Sr. J. concurs

SULLIVAN, J. concurs in part and dissents in part with separate opinion

SULLIVAN, Judge, concurring in part and dissenting in part

The majority observes, correctly I believe, that the Indiana Supreme Court in *Mayhue v. Sparkman* (1995) Ind., 653 N.E.2d 1384 held the following: (1) That Indiana adopts RESTATEMENT (SECOND) OF TORTS § 323 with regard to medical malpractice claims; (2) That in such instances, we no longer look to traditional proximate cause analysis requiring denial of recovery unless the injury or harm claimed would not have occurred "but for" the defendant's negligence; (3) That given a pre-existing condition which more probably than not would have caused the resultant harm, e.g. death, a claimant may nevertheless recover if the defendant's negligence was a "substantial factor in producing the harm." 653 N.E.2d at 1388 (citing *McKellips v. St. Francis Hospital, Inc.* (1987) Okl. 741 P.2d 467, 475);[13] and (4)

That a plaintiff may recover even if the chances of survival or recovery, absent defendant's negligence, were less than 50%.[14]

What *Mayhue v. Sparkman, supra,* did not hold, however, is that a medical malpractice defendant is liable for the total value of the lost life even though the natural pre-existing cancerous condition was the ultimate causative factor, and even though the medical malpractice merely increased the risk of the ultimate occurrence or decreased the chances of recovery or survival. Further, it did not hold that a damage recovery in such situation must be an all-or-nothing recovery.

In stating that acceptance of "the § 323 approach does not require a *separate* loss of chance doctrine," 653 N.E.2d at 1389 (emphasis in original), the court did not reject the concept that a plaintiff's recovery reflects the increased risk element. It did not say that loss of chance is to be disregarded. Rather, the *Mayhue* court seems to have been saying, as did *McKellips, supra,* that the doctrines of § 323 and pure loss of chance are alternatives to accomplish the same policy purpose *as to the hurdle of traditional proximate cause;* that it is not an either/or situation with respect to liability, but also that utilization of § 323 analysis does not depend upon creation of a separate free-standing loss of chance doctrine. In other words, the § 323 approach may stand upon its own base in that it embraces and includes the loss of chance or increased risk concepts.

Although the pure loss of chance doctrine does reason that the "harm" is not the death, but rather is the "reduction in the probability that the patient would recover or obtain better results if the defendant had not been negligent," *Mayhue v. Sparkman, supra,* 653 N.E.2d at 1387, § 323 should not, in an effort to afford *some* recovery, treat the negligent physician as if his negligence were the sole

---

**13.** In *McKellips,* the court held that the jury must determine "whether the *increase in risk* under the circumstances was more likely than not a substantial factor in causing the harm." 741 P.2d at 475 (emphasis supplied).

**14.** Although the majority did not explicitly acknowledge it as a holding of *Mayhue,* it is clear from a reading of § 323 itself, that the focus of the Restatement rule is the increased risk of harm rather than whether the defendant's negligence was *the* proximate cause of the ultimate harm. In this regard, one may note that from case to case, the proximate cause analysis may differ in that some cases refer to *the* proximate cause thereby seeming to disregard the concept that there be multiple causes, all or some of which may be proximate causes. Other cases utilize the usual view that liability may result if the tortfeasor's negligence *is a* proximate cause of the injury.

cause of death. The facts at issue remain the same under either the loss of chance theory or the § 323 theory, and it is difficult to understand why the recoveries should be so dramatically different depending upon which doctrine is applied.[15]

*McKellips v. St. Francis Hospital, Inc., supra,* resolved the matter in a very logical and common sense manner. It adopted § 323 as "the preferable and most rational theory" (741 P.2d at 474) in the context of the proximate cause problem, but it also incorporated the loss of chance doctrine in its analysis of the recoverable damages.[16] I see no procedural or substantive impediment to such reasoning.

Our Supreme Court, although it vacated the Court of Appeals opinion in granting transfer, did not in *Mayhue,* cast any negative implications upon the statement that:

"As to valuation, the chance of survival or of successful treatment, no matter how small, is a compensable interest for which the negligent defendant is liable. Damages for the lost chance are measured by the 'percentage probability by which the defendant's tortious conduct diminished the likelihood of achieving some more favorable result.'" *Mayhue v. Sparkman* (1994) Ind.App., 627 N.E.2d 1354, 1359 (citations omitted).

The Supreme Court did not state that such valuation, even if valid as to application of pure lost chance, would not be acceptable in the setting of a § 323 analysis.

The validity of apportionment is also acknowledged by Professors Prosser and Keeton as deduced in the following comment from Andel, *Medical Malpractice: The Right*

to Recover for the Loss of a Chance of Survival, 12 Pepperdine Law Rev. 973, 988–989 (1985):

"According to Prosser and Keeton, the 'substantial factor' rule replaces the 'but for' rule in traditional proximate cause analysis and is a much better rule where multiple causation has played an important part in producing the harm. *In such cases, responsibility should be imposed upon all causes of the harm . . . .*" (emphasis supplied).

In any event, the *McKellips, supra,* approach to apportionment of damages is preferable to the all or nothing approach adopted by the majority in the case before us.

The *Mayhue* court itself acknowledged, at least by inference, that there is no impediment to having our juries apportion damages in multiple causation cases. Although proximate cause complications are sought to be resolved by application of § 323, the court gave our fact-finding system credit for having the ability to meet the task of apportionment. The Court stated that adoption of the § 323 analysis " is most consistent with Indiana law, particularly our strong faith in the ability of the jury to decide such complex questions." 653 N.E.2d at 1389.

This confidence is expressed by other scholarly treatments of the subject. In Shoenberger, *Medical Malpractice InjuryCausation and Valuation of the Loss of Chance to Survive,* 6 Journal of Legal Medicine 51, 82–83 (1985), Professor Shoenberger notes:

"If we are willing to trust juries to attempt to allocate responsibility in a comparative negligence state according to percentages, it appears anomalous to have difficulty

---

15. It must be noted that the complaint of Cummings in the case before us included not only a claim for loss of consortium, as in *Mayhue,* and a survival action pursued as decedent's personal representative but also a wrongful death action. *Mayhue* did not involve a wrongful death claim. It may well be that as to a wrongful death claim, the harm alleged is truly the death itself, as opposed to a claim under § 323 for an increased risk which was a substantial factor in *the* harm, i.e. the death. Therefore, as to the wrongful death aspect of this appeal, the majority is perhaps correct in holding that the harm is the death and that if plaintiff is to recover it must be for the death itself. Nevertheless, I do not per-

ceive that isolation of the death from the increased risk element of § 323, precludes a valuation for purposes of recoverable damages of less than the full measure of damages that would be awarded were the defendant's negligence the sole proximate cause of the death.

16. The majority opinion here sets forth the procedure for calculation of damages as envisioned by *McKellips v. Saint Francis Hospital, Inc., supra.* 741 P.2d at 471, n. 4. *See generally:* King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353 (1981).

with permitting the jury to perform exactly that same function in a value of a [§ 323] case."

In summation, I concur that under § 323, a plaintiff may recover damages from a negligent physician, whose negligence is a substantial factor in increasing the risk of death, even though the patient would have died of natural causes without any negligence on the part of the defendant. I further concur that such recovery may lie even though the patient's chances of recovery or survival were as little as 10%, absent negligence on the part of the physician, so long as the plaintiff establishes by the evidence that the defendant's negligence was a substantial factor in increasing the risk. I do not, however, concur in the holding that if the jury finds liability, they must award full damages against the physician as if there had been no contributing cause. Rather, I would hold that the jury should be instructed to apportion any damages for the malpractice liability based upon the *McKellips* formula or some similar formula, so long as the defendant has produced expert evidence with respect to the percentages involved, i.e. the percentage of increased risk or diminished chance of survival.[17]

---

**17.** If death has not occurred, I venture no opinion as to the apportionability of percentages attributable to a lessening or increase of pain and suffering, medical expenses, quality of life etc. vis-a-vis a continuation of the pre-existing condition. Furthermore, I express no view with reference to the burden of proof as to apportionability, except to state that it may be appropriate to hold the defendant responsible for all damages except those which he can prove arose from the disease or condition. *Scafidi v. Seiler* (1990) 119 N.J. 93, 574 A.2d 398.